[No. 4546.  Decided July 26, 1904.]

DAVID O'SULLIVAN, *Respondent,* v. MARGARET O'SUL-
LIVAN, *Appellant.*[1]

DIVORCE — CRUELTY — ABUSIVE LANGUAGE — FINDINGS OF TRIAL
COURT.    In an action for a divorce brought by the husband, where
there was evidence that the wife was in the habit of applying
vile and opprobrious epithets to her husband without reason, and
that she had been carried into the house while under the influence
of liquor, and when in such condition was quite abusive, findings
of the trial court, who heard and saw the witnesses, that the
husband was entitled to a divorce on the ground of cruel treat-
ment, will not be disturbed on appeal.

SAME—DIVISION OF PROPERTY.  Findings of the trial court, upon
granting a divorce, that all of the property was community prop-
erty, and making an equal division thereof, will not be disturbed
on appeal, upon the claim of the wife that her separate earnings,
accumulated before marriage, constituted the sole consideration
for a certain part of the property, where the evidence showed
that the same was purchased about one year after the marriage,
that both parties were industrious and accumulated money, and
there was not sufficient evidence to overcome the presumption
that property acquired after marriage belonged to the community.

Appeal from a judgment of the superior court for King
county, Griffin, J., entered August 7, 1902, upon findings
in favor of the plaintiff, after a trial on the merits before
the court without a jury, decreeing a divorce on the ground
of cruelty.  Affirmed.

*James Hamilton Lewis, Thomas B. Hardin,* and *John E.
Humphries* (*Leroy V. Newcomb,* of counsel), for appel-
lant.

*John Arthur,* for respondent.

PER CURIAM.—This was an action for divorce, instituted
by David O'Sullivan, plaintiff, against Margaret O'Sulli-

[1]Reported in 77 Pac. 806.

van, defendant, in the superior court of King county.   Defendant appeals from the following judgment, entered in the trial court in such action:

"This cause having been regularly tried on the 4th day of August, 1902, upon the issues framed by the complaint, the answer, and the reply of the respective parties, the plaintiff appearing in person and by his attorney of record, and the defendant appearing in person and by her attorneys of record, and the testimony of witnesses in behalf of the respective parties having been duly submitted to the court, and the court having heretofore made its findings of fact and conclusions of law herein, making and stating the same separately, and having filed the same herein, from which it appears that all the material allegations of the complaint are sustained by the testimony, that there is no issue of the marriage between the plaintiff David O'Sullivan and the defendant Margaret O'Sullivan, and that all the property held by them, with the exception of lots numbered one (1) and two (2) in block numbered thirty (30) in Burke's Second Addition to the city of Seattle, is community property, and all and singular the law and the premises being by the court understood and fully considered, it is hereby

"ORDERED, ADJUDGED and DECREED, And this court does order, adjudge and decree, that the marriage between the plaintiff David O'Sullivan and the defendant Margaret O'Sullivan be dissolved, and the same is hereby dissolved, and the said parties are, and each of them is, free and absolutely released from the bonds of matrimony and all the obligations thereof; and the said parties are, and each of them is, expressly prohibited from contracting any marriage with a third party within the period of six months from the date of the entry of this decree, or if an appeal is taken, not until after the said appeal is finally determined.

"It is further ordered, adjudged and decreed that the property held by them be divided and awarded as follows: The plaintiff shall have his personal clothing and personal effects; also lots numbered severally one (1) and two (2) in block numbered thirty (30) in Burke's Second Addition to the city of Seattle; also that portion of lot numbered

one (1) in block numbered four (4) in W. R. Brawley's Addition to the city of Seattle, commencing at the northeast corner of said lot and running thence south sixty-eight (68) feet, thence west fifty-three (53) feet, thence north sixty-eight (68) feet to the north line of said lot, being the place of beginning; also that portion of lot numbered two (2) in block numbered four (4) of said W. R. Brawley's Addition to the city of Seattle, described as follows, to wit: beginning at the northwest corner of said lot and running thence south one hundred and twenty (120) feet, thence east thirty-four (34) feet, thence north one hundred and twenty (120) feet to the north line of said lot, thence west thirty-four (34) feet to the northwest corner of said lot, being the place of beginning; also all the rights and interests in mining claims in the Yukon Territory, Dominion of Canada, mentioned in said Findings of Fact.

"The defendant shall have all the personal property other than the personal clothng and personal effects of the plaintiff; said personal property for her including all the household furniture and the pianoforte; also all the remaining portion of said lots numbered severally one (1) and two (2) in block numbered four (4) in W. R. Brawley's Addition to the city of Seattle; also the west thirty (30) feet of the east sixty (60) feet of lot numbered five (5) in block numbered seven (7) in Terry's Fifth Addition to the city of Seattle.

"It is further ordered, adjudged and decreed that the plaintiff shall pay to the defendant, within one year from the date of this decree, the sum of seven hundred and fifty dollars ($750), with interest thereon at the legal rate until paid, which said sum of seven hundred and fifty dollars ($750) shall be, until paid, a lien upon all of said real property awarded to the plaintiff. The costs of this suit and the attorneys' fees shall be paid by the respective parties. It is further ordered that each party to this action shall have right of access over any alleys now existing to the several parcels of real property above mentioned, which right may be taken away, restricted or modified by order of the court if the privilege granted be abused by either party to the injury of the other."

The assignments of error practically present but two questions for our consideration on this appeal.

(1)   It is contended that the court below erred in granting respondent a divorce from appellant on the grounds of cruelty as alleged in the complaint. The trial court found, on this branch of the present controversy, that,

"The defendant has for several years last past treated the plaintiff with great cruelty and inflicted upon him indignities which have rendered his life burdensome. She has habitually called him improper and degrading names and frequently scolded him in a loud and boisterous manner. The plaintiff and the defendant can no longer live together as husband and wife. The plaintiff has used improper language in the presence of the defendant and her family; but offenses in this regard have been principally committed by the defendant."

This court has held, in numerous decisions, that, where we deemed the evidence adduced in the trial court as evenly balanced, or not clearly in appellant's favor, we were inclined to sustain the finding of the judge, who saw and heard the witnesses. *Hamar v. Peterson,* 9 Wash. 152, 37 Pac. 309; *Skeel v. Christenson,* 17 Wash. 649, 50 Pac. 466; *Washington Dredging etc. Co. v. Partridge,* 19 Wash. 62, 52 Pac. 523; *Cullen v. Whitham,* 33 Wash. 366, 74 Pac. 581; *Cochran v. Yoho,* 34 Wash. 238, 75 Pac. 815. Applying this rule to the facts in the case at bar, we are not prepared to hold that the trial court erred in finding appellant guilty of acts of cruelty towards respondent, as charged in the complaint. The testimony abundantly shows that respondent and appellant were industrious and frugal individuals; that respondent was a person of even temper, possessed the faculty of getting along smoothly with his employers, and was generally considered a good neighbor. There was also testimony in respondent's behalf tending to show that appellant was in the habit of applying vile and

opprobrious epithets to her husband, without cause or rea-
son; that respondent did not retaliate, but remained pas-
sive. Witness Jonathan Gifford testified that about one
year before the trial, he took appellant off the street one
evening and carried her into the house, at a time when
she was under the influence of liquor and somewhat dis-
orderly; that when in such a condition she was quite abu-
sive, and had a good command of rough language. Mrs.
O'Sullivan, while on the witness stand, denied that she had
ever called her husband vulgar names or had applied to him
opprobrious epithets, and emphatically contradicted all the
statements of Gifford as to having been drunk and dis-
orderly, and that he had picked her up off the street and
carried her into the house. There was, also, some evidence
in appellant's behalf tending to show that respondent had
used improper language in the presence and hearing of
Mrs. O'Sullivan and her family. We feel, after a careful
examination of the record, that we would not be justified in
setting aside the above finding, or in reversing the decision
of the lower court on the main issues of the present con-
troversy.

(2) The more serious contentions respecting this litiga-
tion arise over the adjustment of the property rights be-
tween the parties. The able counsel for appellant contend,
vigorously, that their client was treated very inequitably
in this respect; that Mrs. O'Sullivan should have been
awarded the premises designated in the record as No. 925
Washington street in the city of Seattle, in addition to
other property given her. The valuation placed on this
property, by competent witnesses who testified at the hear-
ing, was $4,250, and it constituted a part of the property
awarded respondent in the division made by the superior
court. It appears from the evidence that, at the time re-

spondent and appellant intermarried in 1888, he was the owner of lots 1 and 2 in block 30, Burke's Second Addition to Seattle, which was of the value of $400. These lots were set over to respondent. The trial court found, among other things, that all the real estate and household furniture described in the above decree, save these two lots in Burke's Second Addition, were acquired by them since their marriage, and in its decree divided the same approximately equally between the parties, giving to each property of the value of about eight thousand dollars.

The appellant urges that the testimony showed that her individual earnings, accumulated prior to her marriage with respondent, constituted the sole and exclusive consideration for the purchase of the property described as the west 30 feet of east 60 feet of Lot No. 5, Blk. 7, in Terry's Fifth Addition to Seattle. The value of this property, as shown by the testimony, was $1,300. It appears, however, that this property was purchased by appellant a little over one year after her marriage with Mr. O'Sullivan, and that both members of the community were frugal and industrious, and accumulated money. All property accumulated by husband and wife, during the continuance of the marriage relation, is presumed to be community property, and we fail to find sufficient evidence to overcome such presumption with regard to the property in question. Under the showing made, we think we would not be warranted in taking from respondent, and setting off to appellant, the property known as 925 Washington street, Seattle, in addition to the property and interests which had already been awarded to her.

As we find no reversible error in the record, the judgment of the court below must be affirmed, and it is so ordered.