·C. D. COCHRAN *et al., Respondents,* v. J. F. YOHO *et al.,*
. *Appellants.*[1]

MECHANICS' LIENS—FORECLOSURE—COMPLAINT—CONTRACT ABAN-
DONED BY ONE OF THREE CONTRACTORS—PERFORMANCE BY OTHERS
ACCEPTED. A complaint for the foreclosure of a mechanics' lien
is not demurrable because it appears that one of the three original
contractors withdrew from the contract before the work was
commenced, where it is alleged that the other two contractors
undertook the work and that plaintiff made partial payments to
them as the work progressed, and accepted part of the buildings
when completed.

SAME—OWNER STOPPING WORK BY EJECTING CONTRACTORS—
DAMAGES — EVIDENCE — SUFFICIENCY — FINDINGS WHEN NOT DIS-
TURBED. A finding that the owner of premises forcibly ejected
the contractors is sustained by evidence that he locked them out
and informed them that one of the contractors would not be al-
lowed to do any more work, because he was dissatisfied with the
same, although afterwards the owner gave them written notice to
proceed with the work, and the finding that the owner was not
justified in stopping the work will not be disturbed on conflicting
evidence where the trial court had an opportunity to observe the
witnesses.

SAME—NOTICE TO CONTINUE WORK AFTER RESCISSION OF CON-
TRACT. By wrongfully stopping the work, the owner became
liable to the contractors, and after treating the contract as re-
scinded they were not required to go back to work by receipt of
the written notice.

SAME—EVIDENCE OF DAMAGES TO CONTRACTORS—AMOUNT. Upon
examination of the testimony an allowance for damages to the
contractors is reduced by certain credits to which the owner
appears entitled, ordering judgment for $413.38 instead of $482.10.

Appeal from a judgment of the superior court for King
county, Tallman, J., entered February 24, 1902, upon the
findings and decision of the court in favor of plaintiffs,
after a trial on the merits before the court without a jury,
in an action to foreclose a mechanics' lien. Modified.

[1]Reported in 75 Pac. 815.

*Sweeney, French & Steiner,* for appellants.

*Ira Bronson,* for respondent.

PER CURIAM.—This action was commenced in the superior court of King county by C. D. Cochran and A. J. Webb, as plaintiffs, against J. F. Yoho and Mary Yoho, his wife, as defendants. Plaintiffs allege in their amended complaint that, on or about the 14th day of December, 1900, they and one C. L. Huggins entered into a written contract with J. F. Yoho, for the construction of four certain two-story frame buildings upon lot 4 in block 54 of the Second Addition to the city of Seattle. This contract is referred to as an exhibit, and is as follows:

"Seattle, Wash., Dec. 17th, 1901.

"We, the parties of the first part, C. L. Huggins, A. J. Webb and C. D. Cochran, and J. F. Yoho of the second part, do enter into a contract for the construction of four, four part tenement houses to be erected on lot 4, block 54, Sarah A. Bell's 2nd addition to Seattle, Wash. The parties of the first part agree to furnish all material and labor for construction and completion of said buildings according to plans and specifications for the sum of forty four hundred dollars ($4400). Said buildings are to be commenced at once and completed as soon as possible. The party of the second part agrees to furnish a sufficient amount of money for the parties of the first part to get the material for said buildings, but at no time to pay any in advance. All bills to be receipted and turned into party of second part before final payment." [Signed, etc.]

The complaint further alleges that, immediately after the execution of this contract, C. L. Huggins abandoned said contract, and so notified these plaintiffs (Cochran and Webb), verbally, without giving any reasons therefor. That on the 17th day of December, 1900, these plaintiffs commenced to perform labor and furnish materials to be used in the construction of such buildings, the contract price

therefor being $4,400; that plaintiffs continued to perform said labor and furnish said materials up to and including the 9th day of March, 1901, and, before that time, had completed two of said buildings and delivered the same to said Yoho, who thereupon accepted the same; that on the 9th day of March, 1901, said J. F. Yoho forcibly and unlawfully ejected these plaintiffs from said premises, and refused to allow them to complete said contract; that plaintiffs thereupon were compelled to and did cease to perform any further labor, or furnish any further materials, under such contract; that, when plaintiffs quit said work, an expenditure of $150 would have completed the two remaining buildings; that the contract price of each building was $1,100; that defendants are the owners and reputed owners of said premises; that J. F. Yoho advanced to plaintiffs $3,687.92 under said contract; that there is a balance due plaintiffs of $712.08, with interest thereon from March 9, 1901; and that, within ninety days after quitting work, plaintiffs made and filed their lien on said premises, for labor and materials so furnished, in the auditor's office of said King county, and the same was duly recorded. Plaintiffs asked judgment for the above amount, and interest, for a foreclosure of their said lien, and costs, including an attorney's fee of $150, and for general relief. Defendants filed a general demurrer to such complaint, which was overruled. Defendants, by their answer to such amended complaint, put in issue the material allegations thereof; and, for further defense and counterclaim, allege, in part, as follows:

"(2) That in accordance with the terms of said contract the said Cochran, Webb, and Huggins were to construct the said buildings in accordance with certain plans and specifications furnished, and that it was also provided that the lumber furnished was to be of good quality, and that the said houses were to be completed as soon as pos-

sible. (3) That contrary to the terms of said agreement the said lumber furnished was of an inferior quality and was not suitable for the use to which it was put, the buildings were not and are not constructed in accordance with the plans and specifications provided, and the work was performed in a careless, indifferent, and unworkmanlike manner. (4) That contrary to the terms of said contract after partially constructing said buildings and before the completion thereof and while the same were in an exposed and unfinished condition, these plaintiffs wilfully abandoned said labor, on or about March 9th, 1901, and then refused, and at subsequent times when notified by the said J. F. Yoho to complete the said buildings, refused to further perform labor or to further furnish material. (5) That up to and including the 9th day of March, 1901, when these plaintiffs abandoned said contract as above alleged, the said J. F. Yoho had paid these plaintiffs for use in the said houses the sum of four thousand twenty two dollars and twelve cents ($4022.12). (6) That the defendant J. F. Yoho was compelled to and did actually expend the further sum of five hundred sixty six dollars sixty nine cents ($566.69) for the completion of said houses in accordance with the terms of said contract."

The defendants further allege damages in the sum of $1,500, and ask judgment against plaintiffs for $1,688.71 on their counterclaim. Plaintiffs in their reply deny each and all the material allegations of new matter contained in the answer.

The cause was tried to the court without a jury on the 6th day of January, 1902, and thereupon the following findings of fact, among others, were made by the trial court:

"(5) That on or about the 6th day of March, 1901, the defendant J. F. Yoho forcibly ejected the plaintiffs from said premises, and refused to allow them to further perform said contract, or to carry the same out or complete the same, and that thereupon the plaintiffs ceased to perform any further labor, or to furnish any further materials,

upon said houses; that all of said labor and materials under said contract were performed and furnished between the 17th day of December, 1900, and the 9th day of March, 1901. (6) That at the time when said defendant J. F. Yoho refused to allow the plaintiffs to further perform said contract, one hundred and fifty dollars would have completed said buildings, including all necessary material therefor. (7) That during the construction of said buildings, it had been agreed between the plaintiffs and the defendant, J. F. Yoho, that four chimneys might be omitted from said houses, for which the plaintiffs agreed to allow the defendants their reasonable cost. (8) That the reasonable costs of said chimneys would have amounted to eighty dollars. (9) That the labor performed and materials furnished, as aforesaid, to be used in and which were used in the construction of said buildings, were furnished to the said J. F. Yoho in accordance with the terms and conditions of said contract, except as in paragraph seven hereof stated. . . . . (14) And the court further finds that it was agreed upon the trial of this cause between the plaintiffs and defendants and stipulated therein that, in case said lien was foreclosed and a decree rendered in favor of the plaintiffs, $150 was a reasonable attorney's fee to be allowed the plaintiff in this cause."

The court thereupon stated the following conclusions of law:

"(1) That the defendants are indebted to the plaintiffs in the sum of $482.10, together with interest thereon from the 9th day of March, 1901, at the legal rate, aggregating $510.20, together with an attorney's fee of $150, and their costs herein, and that the plaintiffs are entitled to a judgment against the defendants for said sums. (2) That the lien, mentioned and described in the findings of fact herein, is a good, first, and valid and subsisting lien upon the premises therein described, and that the plaintiffs are entitled to have said lien foreclosed, and the premises therein described sold by the sheriff of this county, and that the proceeds of such sale be applied in payment of such judgment, attorney's fees, interest, and costs, together with the costs and increased costs of such sale."

Defendants excepted to each of the above findings and conclusions of law. Defendants also made requests for findings and conclusions, based upon the allegations of their answer and their contentions at the hearing, which were refused by the superior court, to which ruling they duly excepted. Judgment having been entered in conformity with the findings and conclusions of law, the defendants appeal to this court.

Appellants assign errors as follows: (1) That the trial court erred in not sustaining the demurrer to the amended complaint; (2) in making the findings of fact and conclusions of law to which appellants excepted as above noted; (3) in not making certain findings and conclusions of law proposed by appellants.

The main contention of appellants, in support of their demurrer to the above complaint, is based upon the proposition that it appears from such pleading that the original contract for the construction of these buildings was entered into between respondents and one Huggins, as parties of the first part, and J. F. Yoho, appellant, as party of the second part, and that said Huggins withdrew from the work, and that there is no allegation in the complaint of knowledge or consent to such withdrawal on the part of the owner, J. F. Yoho. Respondents, in their amended complaint, among other things, allege that, immediately after the execution of the contract, the said C. L. Huggins abandoned said contract, that respondents commenced to perform labor and furnish materials for the erection of these structures from December 17, 1900, and continued in so doing up to and including March 9, 1901, and before that time had completed two of said buildings and delivered the same to appellant, Yoho, who accepted the same. For the purposes of this demurrer, these allegations must be taken as true. Giving these averments a reasonable and liberal

interpretation, they show that respondents performed labor and furnished materials to appellants between the above dates, by reason whereof the latter were benefited; that appellants accepted respondents' work, and the materials furnished by them, in erecting and finishing the two structures above named. The complaint further alleges that appellants paid respondents a large sum of money on account of such contract. Considering the complaint as a whole, we think it fair to assume, from the allegations thereof, that the appellants knew that respondents were the parties with whom they were dealing in these transactions; that the other party, C. L. Huggins, was not concerned therein; and that appellants, having knowingly dealt with respondents in the premises, became liable to them for furnishing the labor and materials alleged in this complaint. We are therefore of the opinion that this pleading states a cause of action, and that the superior court committed no error in overruling appellants' demurrer to the amended complaint. .

Appellants contend there was no evidence to justify the finding of the trial court that "defendant Yoho forcibly ejected plaintiffs from said premises." Respondent Cochran testified that, "on Monday, about the 4th or 5th of March, 1901, when we arrived at the premises, Yoho hadn't got there, we found our tools were locked up and we waited a few minutes for Yoho. I asked him if he wanted us to go to work on the coal shed; he said, 'No,' he would not let us go to work at all; he said he would not let us have anything to do with it, he would not have anything to do with us any more, especially me; said he would not allow me around there; and we came around to see Mr. Bronson, and Mr. Bronson was not in his office, and when we came back he had our tools there on the back porch, and would not let us in at all." Respondent Webb substanti-

ally corroborates, in his testimony, Cochran's statements on this branch of the controversy. This witness also stated that on the above occasion Yoho remarked to him, "Well, there can't be any work here until this thing is adjusted, . . . you and I can get along all right and do this work, but Cochran can never drive another nail here." Witness Strum, in behalf of respondents, testified that he was engaged to paint the house, and was discharged by Yoho. Appellant Yoho, referring to this matter about locking up respondents' tools, testified: "They stated I had the tools locked up. They had a key to the room themselves." Respondent Webb denied having any key, and testified that only one key came with each rim lock. Cochran testified that Yoho got the keys from him on the Saturday night previous to this Monday morning when respondents quit work, in order to clean out one of the flats, so that a tenant of appellants might move in. Appellant Yoho on his cross-examination testified: "Q. You told me (Bronson) you didn't have any objection to Mr. Webb, but that Mr. Cochran could not work there any more? A. Yes sir, I told you that."

It further appears from Yoho's evidence that, at and prior to the time respondents quit working on these buildings, he was very much dissatisfied with the quality of the work thereon, and that disagreements between him and Cochran were frequent; that, within a day or two after the alleged ejectment of respondents, appellant Yoho served a written notice upon Webb, Cochran, and Huggins that, unless they proceeded at once with the construction of these four buildings, he would consider that they had abandoned the work, and look to them for whatever damages he might sustain thereby. Respondents admit the receipt and service of this notice upon them.

We have examined the testimony carefully with reference to the finding of fact of the trial court above noted, regarding the question whether the respondents voluntarily abandoned their contract, or whether appellant Yoho forced them to quit working on these buildings, and conclude that there was sufficient evidence to justify this finding. On the face of the record, the preponderance of the testimony seems to support the contentions of respondents as to that feature of the controversy. In arriving at this conclusion, we have taken into consideration the testimony of appellant J. F. Yoho and his witnesses with reference to the poor quality of the work performed on these structures, whereby Yoho claims he was justified in stopping work thereon. This evidence was directly in conflict with the testimony adduced in respondents' behalf, which tended to show that appellant J. F. Yoho rushed the work in order to get the buildings ready for tenants to occupy, that during much of the time while the buildings were in course of erection, the weather was unfavorable to good workmanship, especially as regards the plastering, which did not have an adequate opportunity to dry. There was also considerable testimony in behalf of respondents to the effect that the job was a good one. If the evidence in appellants' behalf was true, they were justified in refusing to allow respondents to proceed with the work, in violation of their contract, which is the basis of the present action. The trial court, who saw the witnesses and heard their testimony while giving their evidence at the trial, had better opportunities than we possess for judging as to the credibility of individual witnesses, and the weight that should be given to their testimony, and found against appellants on this very important feature in the case. Under well settled rules of law frequently announced by this court, we do not feel warranted in

interfering with that finding.  See, *Washington Dredging etc. Co. v. Partridge,* 19 Wash. 62, 52 Pac. 523, and authorities cited.

Treating the above finding as a verity for the purposes of this controversy, we are constrained to hold, as a matter of law, that appellants, by wrongfully stopping the work on these buildings, rendered themselves liable to respondents in damages.  We are of the opinion that the fact of appellants having given notice to respondents and Huggins to proceed with the work does not affect respondents' right to recover in the case at bar; that the latter, by the acts of J. F. Yoho, had a right to treat the contract as rescinded, and they could not legally be required to go back to work on those structures, under the original contract; that J. F. Yoho, being the party at fault, under the findings of the trial court, in causing respondents to quit work, must bear the consequences of his own acts.  "Where one of the parties to a contract, either before the time for performance or in the course of performance, makes performance or further performance by him impossible, the other party is discharged and may sue at once for the breach."  9 Cyc. 639, and authorities cited.

It is admitted that, during the progress of the above work, appellants advanced $3,687.92 under the contract. The trial court found that, when respondents quit work, $150 would have completed said buildings, including all necessary materials therefor.  We think that, on the respondents' evidence, appellants should have been allowed an additional credit of $25, making the sum total of $175 to be deducted from the contract price for labor and material necessary to complete the buildings.  Under the testimony the cost of the erection of eight chimneys should have been deducted from the contract price for the completion of the buildings.  The trial court allowed

a credit of $80 for only four chimneys. The estimated value of these chimneys, according to the evidence, at the time respondents quit work, was 70 cts. per running foot. The testimony is somewhat ambiguous as to the actual lineal measurement of these chimneys, but, after a careful consideration of the matter, we have concluded that a deduction of $123.70 must be allowed appellants from the contract price, instead of $80, as found by the superior court. Deducting these total credits, amounting to $3,986.12, from $4,400, the contract price, leaves a balance of $413.88; and for this amount, together with interest at the legal rate from March 9, 1901, and the costs and attorney's fees allowed by the lower court, we direct judgment to be entered by the lower court.

No costs shall be taxed in favor of either respondents or appellants on this appeal. This cause is therefore remanded with directions to enter judgment in conformity with this opinion.