[No. 12381.     Department Two.     January 4, 1915.]

THE STATE OF WASHINGTON, *on the Relation of Raymond Light & Water Company, Respondent*, v. PUBLIC SERVICE COMMISSION et al., *Appellants*.[1]

WATERS AND WATER COURSES—WATER COMPANIES—REGULATION— RATES—CONTRACTS—POWER OF COMMISSION. Agreements made by a water company, in acquiring all the water supply of mill companies without reservation, to furnish the mill companies with water for a stated period, free or at reduced rates, are not either void or voidable under the terms of the public utilities act, subsequently enacted, 3 Rem. & Bal. Code, § 8626-1 *et seq.*, prohibiting preferences and discrimination between patrons, in view of the proviso that nothing in the act shall prevent any water company from continuing to furnish its product or service under any contract in force at the date this act takes effect, thereby excepting such prior contracts; and § 8626-34 of the act authorizing the commission, in its discretion, to direct by order that such contracts shall be terminated by the company, as and when directed by such order, does not authorize the commission to terminate the contracts, but only authorizes a termination of such contracts, if legal, by the consent of the parties or such legal proceedings by the company as may be proper.

SAME—REGULATION—LEGAL CONTRACTS—JURISDICTION—ORDERS OF COMMISSION. Upon an application by a city alleging unreasonable and excessive rates and inadequate service by a water company, which had obligated itself, in the acquisition of its water supply, to furnish free water to the owners of the water, the public service commission has jurisdiction to determine the issues presented between the city and the water company as to the reasonableness of rates and adequacy of service; and under its discretionary power to order the termination of any such contract for free water, its order to that effect will be construed as a direction to the water company to take steps to terminate such contracts, if the contracts were legal and binding.

[1]Reported in 145 Pac. 215.

SAME—REGULATION—CONTRACTS — TERMINATION — DISCRETION OF COMMISSION. Since, by Rem. & Bal. Code, § 8626-34, it is discretionary for the public service commission to order the termination of contracts for the supply of water entered into prior to the taking effect of the act, the commission may, after ordering the termination of contracts for free water, upon the intervention of the parties interested, vacate its order, where it appears that the water company's deed for its water supply and the contracts for free water to the grantors in such deed were parts of one and the same transaction, and that one was the consideration for the other.

Appeal from a judgment of the superior court for Thurston county, Claypool, J., entered May 28, 1914, reversing, on writ of certiorari, an order of the public service commission fixing rates for public water service. Reversed.

*The Attorney General* and *B. O. Graham*, for appellants Public Service Commission *et al.*

*Corwin S. Shank* and *H. C. Belt*, for appellants Willapa Lumber Company *et al.*

*Grosscup & Lee* and *George Dysart*, for respondent.

MOUNT, J.—This appeal is from an order of the superior court for Thurston county, reversing an order of the public service commission. The Willapa Lumber Company, the Siler Mill Company and the public service commission have each appealed from the order of the superior court.

The facts are as follows: In August, 1912, the city of Raymond, by its proper authorities, filed a complaint against the Raymond Light & Water Company with the public service commission, challenging the rates of the water company as unreasonable and excessive, and alleging that the supply of water furnished by the water company to the citizens of Raymond was inadequate and insufficient. The Raymond Light & Water Company answered the complaint, and alleged that, under the existing rates, its returns upon its investment were insufficient, and alleged that it had spent large sums of money in furnishing the city of Raymond with a water supply, and intended to still further extend and expand its plant.

Thereafter in February, 1913, a hearing was had before the public service commission upon the issues raised by the complaint and answer. Testimony was introduced, and in the course thereof it developed that there were two outstanding water contracts, made and entered into between the Willapa Lumber Company, the Siler Mill Company, and the Raymond Light & Water Company, in the year 1904, by which the water company was deriving and would derive no revenue therefrom for a period of 49 years. Upon the conclusion of the testimony the public service commission entered its findings of fact and conclusions of law to the effect:

(1) That the respondent water company had, for a period of years, furnished water free or at reduced rates to the Siler Mill Company and the Willapa Lumber Company and that, if such water so furnished free had been charged for on the basis of the published tariff rates, the estimated increased income of the water company would be approximately $3,600 per year.

(2) That the rapid and unusual growth of the city of Raymond had necessitated a rapid extension of water mains and increased water supply and continual and unusual expenditures by the water company.

(3) That the water company had failed and neglected to meet its obligations to the city of Raymond and the inhabitants thereof, and had failed to provide an adequate and sufficient supply of water for domestic and manufacturing purposes and had failed and neglected to furnish water under sufficient pressure to insure fire protection, and had failed and neglected to provide suitable mains for distributing the water supply.

(4) That the rates and charges of the water company had been varied and discriminatory on account of the contracts with the Willapa and Siler companies, and that such contracts should be terminated and such discriminatory practices discontinued.

(5)   The commission then ordered the water company to submit detailed plans to the commission, showing clearly the manner in which the water company proposed to improve its water system and meet its obligations to the public, by providing wholesome water in sufficient quantity to reasonably serve the city of Raymond and to give the estimated cost of such improvements and full information as to the financial ability of the company to successfully carry out such plans.

(6)   The water company was then ordered to install meters upon the plants of the Willapa and Siler companies and to desist from extending further discriminatory privileges to such plants, and to collect from all consumers alike the amount due for water on the basis of the company's published tariffs; and further, that the contracts with the said companies should be terminated and the water company ordered, for a period of one year, to keep an accurate account of all moneys received from and all charges made to these mill companies and others that had been receiving free water, to the end that the commission might be intelligently advised as to what revision, if any, could be made in the rates of the respondent water company.

Thereafter the water company complied with this order of the commission, and filed plans with the public service commission showing to what extent and in what manner it proposed to improve its water system.  It further notified the Siler and Willapa companies of the termination of the water contracts, and proceeded to collect from these industries water bills under the published tariff of rates.  The water company installed meters upon these plants, and in all other respects complied with the commission's order.  The water company prosecuted no writ of review from the commission's order.  The Siler and Willapa companies paid their water bills for a period of several months under protest.

Thereafter in June, 1913, the Willapa and Siler companies filed with the commission a petition in intervention in which it was alleged in substance:

(1)  That the mill companies in question had not been made parties to the original proceeding and were not served and did not appear therein.

(2)  That the commission had no jurisdiction over the subject-matter of the water contracts between these mill companies and the water company.

(3)  That the order entered by the commission with reference to the subject-matter of these contracts deprived the mill companies of valuable property rights without due process of law, and impaired the obligations of such contracts.

The petition in intervention also alleged that, prior to the organization of the Raymond Light & Water Company, the interveners were the owners of the water plant which was then in existence and which was used by them in conducting water from the source of supply to their respective mills; that, when the water company was organized they transferred the water plant to the water company and reserved to themselves such water as they might need for their respective manufacturing plants.

Upon this showing, the Willapa and Siler companies were allowed to intervene, and the public service commission reopened the case upon the issues presented in the petition of the mill companies. After a somewhat extensive hearing going into the history of these contracts with the mill companies, the commission made and entered findings of fact, finding in substance: That the Willapa and Siler companies at the time of the transfer of the water plant to the water company reserved to themselves sufficient water for the use of their respective plants, and then concluded in substance:

(1)  That the water mentioned in the contracts between the Siler and Willapa companies and the respondent water company was reserved to the mill companies;

(2)  That the commission had not at the time of making the order of February, 1913, which order terminated the said

contracts, acquired jurisdiction over either of said mill companies, or over the subject-matter of said contracts.

(3)   That the original order of the commission be modified in so far as it authorized the termination of the said contracts and permitted the Siler and Willapa companies to take and use water as before.

The rest of the original order was not changed.

From this decision of the commission, the respondent water company sued out a writ of review to the superior court for Thurston county.   After a hearing, that court entered a judgment on May 28, 1914, by which the last order of the public service commission was annulled, reversed and set aside, and the first order of the public service commission was reinstated.   From that judgment, this appeal is prosecuted, first, by the public service commission, and second by the mill companies.

The lower court apparently based its judgment upon the conclusion that the contracts entered into between the water company and the mill companies in the year 1904 were avoided by the act of 1911 (Laws of 1911, p. 538; 3 Rem. & Bal. Code, § 8626-1 *et seq.*, relating to the public service commission), because these contracts were contracts for free water to these companies for a period of 49 years; and for the further reason that the deed by which the water works of the mill companies was transferred to the water company did not contain a reservation of water, but transferred the whole rights of the mill companies to the water company; and that the public service commission, in making the first order, had jurisdiction of the parties and authority to cancel these contracts for free water.

The respondent, in a voluminous brief in answer to voluminous briefs filed by the appellants, states that there are but three questions in the case, as follows:   First, Had the public service commission jurisdiction over the persons of the mill companies in making the original order terminating the contracts between the mill companies and the water company;

Second, Had the commission jurisdiction over the subject-matter of the contracts between the interveners mill companies and the respondent water company; and Third, Had the commission the legal right to terminate these contracts in the exercise of its police power?

It is argued by the respondent that the public service commission had jurisdiction to terminate these contracts in the exercise of the police power of the state. If the contracts were contracts which the state, in the exercise of its police power, had a right to terminate and which the state had declared void, as were the contracts in the case of *Cowley v. Northern Pac. R. Co.*, 68 Wash. 558, 123 Pac. 998, 41 L. R. A. (N. S.) 559, or in the case of *State ex rel. Webster v. Superior Court*, 67 Wash. 37, 120 Pac. 861, Ann. Cas. 1913 D. 78, or in *Louisville & N. R. Co. v. Mottley*, 219 U. S. 467, we would have no doubt of the right of the water company, or of the public service commission, to terminate these contracts. But it seems to us that the contracts involved in this case do not partake of the nature of the contracts in those cases. Conceding that there was no reservation of any part of the water on the part of the mill companies when the transfer of the water system was made to the water company, and that simple contracts were entered into by which the water company agreed to furnish water to these mill companies for a period of 49 years, we are still satisfied that the commission act in question does not make these contracts, or contracts of this character, either void or voidable, because at § 34 of the commission act, Laws of 1911 p. 561 (Id., § 8626-34), the act provides:

"Nothing in this act shall be construed to prevent any gas company, electrical company or water company from continuing to furnish its product or the use of its lines, equipment or service under any contract or contracts in force at the date this act takes effect, or upon the taking effect of any schedule or schedules of rates subsequently filed with the commission, as herein provided, at the rates fixed in such contract or contracts: Provided, That the commission shall have power, in

its discretion, to direct by order that such contract or contracts shall be terminated by the company party thereto, and thereupon such contract or contracts shall be terminated by such company as and when directed by such order: . . ."

The act in prior sections provides that water companies shall not make or grant any undue or unreasonable preference or advantage to any person or corporation, that there shall be no discrimination between patrons, and then provides as quoted above, that nothing in this act shall prevent any water company from continuing to furnish its product or service under any contract in force at the date this act takes effect. It seems plain, therefore, that it was the intention of the act that contracts of the character of these were not declared illegal, or even voidable, because they are expressly excepted.

It is true the section then provides that the commission shall have power, in its *discretion*, to direct by order that such contract or contracts shall be terminated by the company party thereto, and that thereupon such contract or contracts shall be terminated *as* and *when* directed by such order. This simply means that if a contract has been entered into, it is within the power of the public service commission, in its discretion, to order that such contract shall be terminated by the company in the manner directed by the public service commission. It was intended, no doubt, that, when a contract of the character of these in question is detrimental to the service of the company furnishing water, the public service commission, if it finds this to be a fact, may direct the termination of such contract. It would be for the parties to the contract to terminate it. If it was a void contract, it might be terminated without damages. If it was a valid and binding contract, before it could be terminated, damages would necessarily be assessed. It could not be reasonably contended that, if a public service corporation furnishing water to a city had acquired by purchase the right to take a certain portion of a stream for the purpose of

furnishing water to its patrons, and it should eventuate that the whole stream was necessary, the public service commission would have the power to require the owner of the stream to deliver it to the public service corporation without compensation. The public service commission could only direct that the public service corporation should acquire the stream by proper and legal methods. And so in this case, these were valid contracts when entered into, upon valid and good considerations. The commission act, as above stated, exempts these contracts from the operation of the statute, except that the public service commission, in the exercise of its discretion may require the companies, or the parties to the contracts, to terminate them. By reason of this exception in the statute we are satisfied that these contracts are neither void nor voidable. They were valid and binding obligations which the statute does not attempt to avoid, but expressly exempts.

Upon the question of jurisdiction, we are satisfied that the public service commission had jurisdiction to determine the questions presented upon the original application between the citizens of Raymond and the water company. It had a right, no doubt, to inquire into the quantity and quality of the water furnished to the citizens, and the facilities for furnishing water. It was authorized to inquire into the reasonableness of the rates; and, for that purpose, to inquire whether water was being furnished free or otherwise. And under its powers in this respect, it might require the water company to desist from furnishing free water. But we are satisfied that the public service commission was not authorized to set aside the contracts in question, first, because the statute does not give the public service commission that authority, and second, even if the statute did give this authority, the beneficiaries under the contracts were clearly entitled to a hearing upon that question. We think the order of the public service commission first made must be construed as directing the water company to terminate the contracts, and did not in itself termi-

nate the contracts.  After this order was made, and after the water company had notified the mill companies that the contracts were terminated, the mill companies then intervened in the case, and alleged in substance, that the contracts ordered to be terminated were valid and binding contracts, that they were the consideration for the transfer of the water plant to the water company, and that the right to take water from the plant was reserved by the mill companies.  The public service commission was then asked to vacate the order requiring the termination of the contracts.  As we have seen above, § 34 expressly provides that the public service commission shall have power in its discretion to terminate such contracts.  In short, the authority of the commission was *discretionary.*  It might exercise that power or not as the facts or circumstances warranted.  After a full and complete hearing upon the question whether these contracts were in effect contracts for free water or otherwise, the commission determined that they were not contracts for free water, but that there was a reservation of the water used by the mill companies at the time the water plant was transferred to the water company.  It is obvious that the public service commission should have taken these facts into consideration before making its first order.  It did not do so.  It was not apprised of the facts or circumstances which led up to the making of the contracts.  Upon a full hearing of all the evidence upon this question, the commission was of the opinion that, while the deed from the mill companies to the water company made no specific reservation of water, the contracts and deed, when taken together, showed that it was intended by the parties that there was a reservation of water sufficient and necessary for the mills.  And, therefore, the commission exercised its discretion and vacated its first order.  It is true there is no reservation in the deed conveying the water plant to the water company.  The deed recites that it conveys a certain quantity of land, making no mention of water.  It does not even mention appurtenances to the land.  The con-

tracts in question were executed a few months later. These contracts recite that the mill companies may connect with the pipes of the water company and use a sufficient amount of water to run their mills for a period of forty-nine years. The evidence clearly shows, we think, that these contracts and deed were a part of one and the same transaction, and that one was the consideration for the other. The evidence also shows that it was the intention of all the parties at the time this deed and these contracts were made that the mill companies should reserve sufficient water for the use of their mills at all times during the period named. The mills to which the water was conveyed and the land upon which the water was used by the mill companies were not transferred to the water company. The deed conveyed simply a tract of land at the headgates of the creek where the water was taken, and a right of way to the town of Raymond. We are satisfied, upon the whole case, that the public service commission in making its last order vacating the first order was acting within its discretion; that there is nothing in the case to justify the conclusion that this discretion was abused; and we are satisfied, therefore, that the trial court was in error in setting aside the last order and reinstating the first order. What we have said above disposes of the case upon its merits, and there is no necessity to discuss other questions presented in the briefs.

The judgment is therefore reversed, and the writ ordered dismissed.

CROW, C. J., MAIN, FULLERTON, and ELLIS, JJ., concur.