William J. Ryan, Incorporated, was the owner and developer of a large tract of land in North Wildwood, in the county of Cape May, and on Labor Day, 1925, through Joseph P. Day, sold at public auction a large number of lots upon said tract of land. The defendant Joshua Bodek, acting for a syndicate, purchased in his own name fifty-eight lots of land. In compliance with a memoranda of sale and of a contract of purchase and sale which he signed, these lots were conveyed to him and he executed, as part consideration therefor, the purchase-money bond and mortgage set forth in the bill.
On the 12th day of January, 1926, by two certain declarations of trust executed by said Joshua Bodek, he made *Page 585 
known and declared that he held certain of said lands and premises in trust for certain therein named persons, and in the amounts therein set forth.
The brief for defendant states "the legal and equitable situation, however, is just the same as if Mr. Bodek alone were interested."
The bill sets forth further that said bond and mortgage contained an agreement that if any installment of interest or principal should remain unpaid for thirty days after the same should fall due, then the whole principal sum, with all unpaid interest, should, at the option of the mortgagee, its representatives or assigns, become immediately due; that "the improvements were completed and notice thereof as provided in said mortgage was duly given, and on May 9th, 1927, an installment of $9,070 fell due with six months' interest, on complainant's bond and mortgage, and remained unpaid for more than thirty days thereafter, and no part thereof has yet been paid. Complainant has elected that the whole principal sum, with all unpaid interest, shall be now due."
An amendment to said bill averred that by legal consolidation the said Excelsior Trust Company merged with and became known as the Colonial Trust Company.
The answer of Bodek and the beneficiaries under the declaration of trust denies that the improvements were completed and notice thereof duly given on May 9th, 1927, as provided in said mortgage; that the improvements specified in the mortgage accompanying said bond specifically agreed by the mortgagee to be made before the installment of $9,070 should become due have not or have any of them been made, therein specifically repeating that which was to have been made, and pray for a dismissal of the bill, and by way of counter-claim allege that in the latter part of November, 1926, the defendants ascertained for the first time that said improvements had never at any time been made and that William J. Ryan, Incorporated, had entirely refused to carry on, perform and complete said improvements; that *Page 586 
the said representations made by William J. Ryan, Incorporated, were and are false and untrue and were made with the intent and for the purpose of fraudulently inducing this defendant, Joshua Bodek, to become the purchaser of these lots; that the notice given by the Ocean City Title and Trust Company was false and untrue; that by reason of the absence of a sewerage system and sewerage connections, said lots are valueless for building purposes; that by reason of the failure of said William J. Ryan, Incorporated, to lay out streets and roads and to grade said lots, said lots are inaccessible, and that by reason of the failure of said William J. Ryan, Incorporated, to carry on and complete said improvements, said defendant, Joshua Bodek, was induced to pay over to said William J. Ryan, Incorporated, a large sum of money and to execute the mortgage aforesaid, to the great injury, damage and loss of the defendant; that the lots are practically worthless and cannot be built upon; that the defendants are ready and willing to reconvey to the complainant this land upon being paid by William J. Ryan, Incorporated, or the complainant, the sums of money heretofore paid by defendant to William J. Ryan, Incorporated, with legal interest. They also allege that the Colonial Trust Company is not a bona fide
holder of said mortgage and pray that the bill may be dismissed; that the mortgage and bond accompanying same be decreed to be invalid and unenforceable, and that it may be delivered up, surrendered and canceled.
The claim of the defendants, as specified in their brief, is that the contracts of purchase were induced by certain fraudulent misrepresentations made by the vendor, William J. Ryan, Incorporated, at the time of the sale, and that the contracts of sale contained an agreement with respect to the improvements, in which a material default has been made.
The representations are three-fold. The first was contained on a sign which sat on the premises on the date of the auction sale, and read as follows:
"WILLIAM J. RYAN, INC. — OWNERS AND DEVELOPERS.
605 Franklin Trust Building, Phila.
Sewer Contract Awarded to Versaggi Bros. *Page 587 
Curb-Sidewalk Contract Awarded to Versaggi Bros.
Sand fill Contract Awarded to United Dredging Co.
 Grading and Graveling Cont. Awd. to Craython-Nickerson.
 All Work and Improvements to be Finished by July 15th, 1926.
Engineering Work in Charge of Harry E. Weir."
An examination of Exhibit R-1 and as enlarged by R-2 andR-3 completely refute this claim and together, with the testimony as given, show conclusively that the wording upon the sign at the time of the sale was not as claimed by the defendant, but was an advertisement of the public auction.
Second, was orally by Mr. Ryan, president of the vendor, to the effect that money had been provided for the building of a sewerage disposal plant.
I find as a fact that Mr. Ryan did not represent that he had provided for the building of a sewerage disposal plant.
Third, by the auctioneer reading as follows:
"Seventh. The seller agrees, at its own expense, to improve the above-mentioned property as follows: Do all the necessary clearing, fill the low area up to a grade approximately equal to the grade of the present county road, do all the necessary grading to establish a uniform grade of the streets, gravel all roads, install concrete sidewalks and curbs and install sewers."
This last representation read by the auctioneer was also embodied in the memoranda of sale signed by Mr. Bodek and, therefore, aside from the representations, became a material part of the contract for sale. The full material language of the memoranda of sale in that connection is as follows:
"The said deed of conveyance shall contain the following conditions, restrictions and limitations, which are intended to be and shall be taken as covenants to run with the land, and which are intended to be and shall be taken as conditions of the said conveyance and one of the express considerations thereof, viz.:
 "RESTRICTIONS.
"That no dwelling or building for business purposes shall be built or erected on the lots offered in this sale to cost less than $3,500 on all lots facing on numbered avenues between Surf avenue and the ocean front; and $4,000 on the lots facing on Surf avenue; and $3,000 on all lots facing on the ocean. That no building of any description shall be at any time erected within 35 feet of the *Page 588 
curb line of any lots east of Surf avenue, but that said space between said house line and street line shall be always left open and clear for the purpose of light and air; that no cesspool shall be dug on said premises, and no privy shall be allowed thereon; that no store buildings (except on the ocean front and Surf avenue), public garage, slaughter house, bone boiling establishment, pig-pen, chicken house, or anything of an offensive or unsightly character shall be erected, kept or maintained upon said premises.
"Sixth. The seller is not required to send any notice to any purchaser, and if any purchaser neglects to call at the time and place specified in the memorandum of sale hereto annexed, to receive his deed, he will be charged with interest thereafter on the whole amount unpaid of his purchase price, provided the seller shall deem it proper to extend the time for the completion of said purchase.
"Seventh. The seller agrees, at its own expense, to improve the above-mentioned property as follows: Do all the necessary clearing, fill the low area up to a grade approximately equal to the grade of the present county road, do all the necessary grading to establish a uniform grade of the streets, gravel all roads, install concrete sidewalks and curbs and install sewers.
"Eighth. The seller reserves the right to complete all development work now in progress or contemplated without hindrance of any sort from the purchaser, and reserves to itself the right to enter upon said premises for this purpose."
Fourth, by the provision in the signing of the additional memorandum of sale wherein it was agreed that the improvements were to be completed within one year from the date thereof, and in the provisions and in a reservation in a deed made by Ryan, Incorporated, to Bodek, wherein the following appears:
"Reserving unto said party of the first part, its successors and assigns `the free right of access in and upon said premises for the purpose of making the following improvements to the land now or formerly belonging to said party of the first part, of which land the lots herein described are a part, namely, the necessary clearing of said land; the filling of the low area up to a grade approximately equal to the grade of the present county road; the necessary grading to establish a uniform grade of the streets; the graveling of all roads; and the installing of concrete sidewalks, curbs and sewers.'"
On or about May 5th, 1926, the defendant received a letter from the Ocean City Title and Trust Company enclosing a bill for six months' interest then due, giving notice that the mortgage had been sold to the complainant and advising him that sufficient money had been deposited *Page 589 
with that company to pay for the completion of the improvements on this tract and that "this company has guaranteed to the holders of your mortgage completion of the said improvements."
I find that the seller has substantially complied with that part of his agreement wherein he agreed to do "all the necessary clearing, fill the low area up to a grade approximately equal to the grade of the present county road, do all the necessary grading to establish a uniform grade of the streets, gravel all roads, install concrete sidewalks and curbs."
There remains, therefore, the determination of the question whether Ryan, Incorporated, has "installed sewers" and if not, is such failure a sufficient ground for the defendant to rescind his contract?
The proof is: Ryan, Incorporated, caused sewer pipes to be laid along the lands in question and up to the point where they should be connected with one of the main lines of the North Wildwood sewerage system, then installed in the street forming one of the boundaries of the Ryan tract. The city refused to permit said pipes so laid by Ryan, Incorporated, to be connected with the municipal sewerage system because some time after the sale by Ryan, Incorporated, the state board of health had secured an injunction against the municipality, restraining it from tapping the municipal sewerage system then in use by additional pipes, which injunction was not vacated until along about March 20th, 1928, when permission was given by the state board of health to connect the sewers on the Ryan tract with those of the city of North Wildwood. Shortly thereafter the borough council accepted said sewerage extension and took it over as a part of the sewerage system of the borough.
Considerable testimony has been elicited and much argument had concerning the laying of the sewerage pipes. It is sufficient to say that the delay in the use of these pipes as a completed system was caused by the action of the state board of health in obtaining said injunction, which injunction was not based upon any defect in the system as laid by Ryan, Incorporated, or upon any other default upon its part, but *Page 590 
was entirely by reason of the failure of the borough of North Wildwood to erect a suitable sewerage disposal plant.
An exception to the general rule, that where performance becomes impossible subsequent to the contract the promissor is not therefore discharged, is recognized by the later cases, where the event creating the impossibility is one which cannot reasonably be supposed to have been within the contemplation of the parties at the time of the contract. In such cases general words in the contract will not impose an absolute liability to perform or to answer in damages, although such words are broad enough to include the contingency which has arisen. 13 Corp.Jur. 640. This principle is enunciated by Mr. Justice Jackson in the supreme court of the United States in the Chicago, Milwaukeeand St. Paul Railway Co. v. Hoyt, 149 U.S. 1 (at p. 14);37 L.Ed. 625.
Performance of a contract cannot be compelled where it would involve a violation of law. Hence, a contract is discharged when after it has been entered into the performance is made unlawful.Schmoele v. Atlantic City Railroad Co., 108 N.J. Eq. 353.
This does not apply, however, where the impossibility created by the law is only temporary. 13 Corp. Jur. 646.
In Krause v. Board of Trustees of School Town ofCrothersville (Supreme Court of Indiana), 70 N.E. Rep. 264, in applying this rule, Chief-Justice Gillett said: "There have been decisions to the effect that substantial performance of covenants will be required where exact performance has become impossible. This proposition is no doubt true, as a general rule, especially in equity. Eaton v. Lyon, 3 Ves. Jr. 690. If the essence of an undertaking can be performed, that will be required. Thus, if a man covenanted to build and complete a house by a certain day, the existence of the plague will excuse him, but he will be required to perform his undertaking afterwards."
Where the law interposes to prevent the performance of a contract, but such prohibition is for a limited time, performance of the contract will be suspended while the law is in *Page 591 
force, but the parties will not be discharged from its performance. School District No. 16 of Sherman County v.Howard, 98 N.W. Rep. 666; 5 Neb. Unofficial Rep. 340.
To the same effect, the laws of the United States laying an embargo for an unlimited time, and afterwards repealed, did not extinguish a promise to deliver debentures to be obtained at the custom house, but operated a suspension only during the continuance of those laws. Baylies v. Fettyplace, 7 Mass. 325;11 Am. Dig. 1694.
It has been held that equity will not rescind a conveyance of land to a railroad company in consideration of passes to be issued to the grantor for life, upon the passage of a statute forbidding further issuance of passes by the railroad company, if it has substantially complied with its contract, and the land has materially increased in value since the conveyance. Cowley v.Northern P.R. Co., 68 Wn. 558; 123 Pac. Rep. 998; 41 L.R.A.
(N.S.) 559.
So in Baily v. De Crespigny (L.R.), 4 Q.B. 180, a leading case, where premises were leased for a term of years, and the lessor covenanted that he would not permit any messuage to be erected on a lot fronting the demised premises, and, during the term, this lot was taken and a railroad station erected thereon by act of Parliament, it was held that the lessor was thereby discharged from his covenant, performance having become impossible by act of the law.
In Doe, ex dem. Anglesea v. Rugeley, 6 Q.B. 107, in speaking of the non-performance of a condition in a lease because forbidden by law, it is said by Lord Chief-Justice Denman: "But even if the condition were not performed, it appears to us that the non-performance would in this case be excused, as being by act of law, and involuntary on the part of the lessee; and the cases cited in the argument, and to be found in Bac. Ab. tit."Condition" (Q), 2 (vol. 4, p. 161, c.); Com. Dig. tit."Condition" (L, 1), and the case of Brewster v. Kitchell, 1Salk. 198, support this view of the case." It follows what has been said, that the defendant cannot be mulcted in damages because of, and only because of, its observance of a law making further performance of the contract on its part impossible.41 L.R.A. 563. *Page 592 
There can be no question but that the injunction obtained by a department of state against a third party, neither of the parties to this action being parties thereto, was the cause of the inability of Ryan, Incorporated, to connect its sewer line to the disposal outlet, and it is as manifest that neither Ryan, Incorporated, or Bodek, had in contemplation any possibility of any event occurring which would prevent such connection.
These comments are made assuming but not deciding that it was the duty of Ryan, Incorporated, under its contract, to "install sewers," to furnish and provide a workable, useable sewerage system. If the views above expressed are correct in that by reason of the legal action taken, Ryan, Incorporated, was excused from the performance of the contract, at least until such time as, under the law, it become possible to perform, it is unnecessary to determine whether the words "install sewers" are sufficiently broad enough to be construed to mean to install pipes and other constructions in and underground upon the property of the defendant to such point as would permit the legal disposal of the water drainage or other matter, or whether the defendants were in a position to rescind, nor any other phase of the case.