WRIGHT, ADMR., ETC., v. CITY OF CRAWFORDSVILLE.

APPELLATE PROCEDURE.—*Instructions Given.—Not Absolutely Incorrect.—Evidence Not in Record.*—A judgment will not be reversed on appeal, in the absence of the evidence from the record, for giving instructions which are not absolutely incorrect under any state of evidence.

SAME.—*Evidence.—Acts of Drunkenness by Plaintiff's Intestate.—Presumption.*—Evidence as to acts of drunkenness on the part of plaintiff s intestate will be presumed, on appeal, in the absence from the record of anything showing the contrary, to have been introduced in rebuttal against evidence to establish an allegation of the complaint that he was a "sober and industrious man."

SAME.—*Instructions Refused.*—*Evidence Not in Record.*—Instructions will be presumed on appeal to have been properly refused, although they are abstractly correct, in the absence of the evidence from the record.

EVIDENCE.—*Specific Acts of Intoxication.*—*Mitigation of Damages.*— *Death.*—Evidence of specific acts of intoxication on the part of plaintiff's intestate is admissible in an action for negligently causing his death, in mitigation of damages.

From the Montgomery Circuit Court.

*J. Wright, J. M. Sellers, B. Crane* and *A. B. Anderson,* for appellant.

*W. T. Whittington* and *A. D. Thomas,* for appellee.

JORDAN, J.—Action by the appellant, in the court below, to recover damages for the death of his decedent, alleged to be due to the negligence of appellee. It appears from the complaint that the decedent was a cabman in the city of Crawfordsville, and that on the night of October 21, 1894, while driving his cab along a street in said city, he drove into a ditch which the city had negligently omitted to properly guard by means of guard rails, etc.; that by reason thereof his cab was overturned and he was thrown into the ditch, and one of the horses attached to the cab fell upon him and broke his neck; that he left surviving him a minor child, and mother and sister depending upon him for support. A trial resulted in a verdict in favor of the appellee, upon which, over appellant's motion for a new trial, judgment was rendered.

The error assigned is the overruling of the motion for a new trial. The record seems to have been framed under the provisions of section 630 of the code of civil procedure, in order to reserve the questions of law decided by the lower court, during the progress of the cause therein, for the decision of this court.

The contentions of appellant's learned counsel, in the main, are that the court erred in giving and refusing certain instructions and in permitting certain evidence relating to the intoxication of the decedent to be given to the jury by the appellee.

The evidence is not in the record, and there is no statement, of the trial judge in the bill of exceptions, that there was any competent evidence introduced upon the trial material to the points covered by the instructions, as provided by section 650 of the code and rule thirty of this court.   Where the evidence is not in the record by a bill of exceptions, and the record in the cause is not properly made up, under the statute or rules of this court, so that we can consider the questions involved which cannot be fully understood and decided without the evidence, we must, as to these questions, presume in favor of the rulings of the lower court thereon. *Indiana, etc., R. W. Co.* v. *Adams,* 112 Ind. 302; *Bain* v. *Goss,* 123 Ind. 511; *Shugart* v. *Miles,* 125 Ind. 445; *Jones* v. *Foley,* 121 Ind. 180; *Smith* v. *James,* 131 Ind. 131; section 241, Elliott App. Proced.

Controlled by this rule, under the state of the record in the case at bar, we must presume that the instructions refused by the court, over appellant's request, although they may have stated the law correctly in the abstract were not relevant or applicable to any evidence before the jury, and therefore properly refused.

Complaint is also made that certain instructions given by the court on its own motion, and also at the request of appellee, are wrong.   But it has been repeatedly held by this court, that where the evidence is not in the record a judgment will not be reversed for giving instructions which would be correct under any evidence that could have been introduced within the issues of the cause.   We have examined the instructions given by

the court, of which appellant complains, but none of them appear to be substantially faulty in the abstract; and, in the absence of the evidence, we cannot adjudge that they were inapplicable to any evidence that might have been given under the issues. *Rapp* v. *Kester*, 125 Ind. 79, and cases cited.

Another contention of appellant is that the court erred in permitting, over his objections, certain witnesses to testify in behalf of appellee, relative to acts of drunkenness on the part of decedent. This evidence is set out in the bill of exceptions, and it shows that for a period of a year and over prior to his alleged death, he was repeatedly seen in a state of intoxication. The complaint alleged that "The deceased was thirty-eight years old, and that he was a sober and industrious man, in good health and able to earn a livelihood for himself and those dependent upon him." We must presume, in the absence of anything in the record showing the contrary, that appellant introduced evidence, tending at least to establish the averment that the decedent was a sober and industrious man, for the purpose of showing that he was more valuable to his dependent family as a protector and in rendering services for their support than if he had been an idle and dissolute person, and that the evidence in controversy was admitted by the court to rebut that given by appellant under the averment in the complaint. See Wood Railway, Vol. 3, section 414.

But aside from this presumption, we think that the evidence was legitimate, under the issues, to be considered by the jury upon the question of the amount of damages to be awarded. The repeated acts of drunkenness disclosed by the evidence, tended to prove that the deceased was addicted to the vicious habit of becoming intoxicated to an extent that, had he lived, would

have tended to impair his ability to earn money and so use it in a manner as would contribute to the proper support of his family.  It is a fact generally conceded and recognized, that drunkenness, as a habit, tends to absorb the earnings of the person addicted thereto, and renders him less fit to accomplish that which he might if he were of temperate habits.

In actions of the character of the one under consideration, the jury is authorized, in awarding damages, to take into consideration the pecuniary loss or injury resulting to those most nearly related to the deceased; and it is obvious, we think, that where it is made to appear that the decedent was addicted to the habit of intoxication and in spending his earnings in whole or in part, as the case might be, for intoxicating liquors, the loss resulting from his death to those dependent upon him for support and protection in the future, would not be as great as in a case where it appeared that the deceased was a sober and industrious man.  In Wood on Railroads, 414, *supra*, in discussing the question of compensation in cases of this kind, it is said: "The business, education, and habits of sobriety and economy of the deceased may be considered."  In Am. and Eng. Ency. of Law, Vol. 5, p. 128, it is said:

"In estimating such damages the jury may also consider the decedent's personal character, and mental and physical capacity."

In the case of *Nashville, etc., R. R. Co.* v. *Prince*, 2 Heisk. (Tenn.) 580, the court said:

"In estimating damages sustained by the defendant in error, it was legitimate for the plaintiff in error to show by proof that the deceased was a drunken and worthless man and made no provision for his family. These were legitimate facts to be considered in estimating damages."

In an action by a father for the seduction of his daughter, the character of the latter, for chastity, prior to her seduction, is involved in the issue upon the question of damages, and proof of particular acts of her sexual immorality or lascivious conduct, is held to be admissible in evidence, in mitigation of damages. See *Shattuck* v. *Myers*, 13 Ind. 46; *Long* v. *Morrison*, 14 Ind. 595; *City of South Bend* v. *Hardy*, 98 Ind. 577; Field Damages, section 105; Abbott Trial Ev., Ch. 45, p. 682, section 7, and authorities cited.

These acts, in suits for seduction, seem to be admissible upon the theory, that if the woman was unchaste before her fall, the injury perpetrated by the wrongdoer may be said not to be so great in its results as it would be had she been of a previous chaste character, and the jury may, therefore, and ought to consider the fact of her previous unchastity in mitigation of damages. See Field Damages, section 108.

It has been held, also, that in an action upon a breach of a marriage contract, the want of virtue and sobriety in the plaintiff, and dissolute conduct, after her engagement, or before, if unknown to the defendant, may be given in evidence, at least in mitigation of damages upon the ground, also, that an unchaste woman cannot be injured by a breach of the promise of marriage to the same extent as a virtuous one. Field, *supra*, section 108.

While it is true, as a general rule, that the moral character of parties to an action, as parties, is not involved, and, therefore, not relevant in evidence, but there are some well recognized exceptions to this rule. Suffice it to say, however, that there are actions, of which the one at bar is an example, where particular traits, habits, or disposition of a party, or the person whose

injury or death is the source of the action, may become material to some issue and therefore admissible.

Counsel, however, further contend that the particular acts of intoxication were not competent in evidence, and they cite us to the rule applicable to the impeachment of a witness on character; but they seemingly confuse real character—that which is actually impressed by nature, traits or habits upon a person, with what is generally termed reputed character. Reputation may be evidence of character, but it is not character itself. That which a person really is must be distinguished from what he is reputed to be. Reputed character is said to be the slow spreading influence of opinion, arising out of the deportment of an individual in the society in which he moves, and in admitting this species of character in evidence in actions, for any purpose for which it may be admissible under the rule allowing the same, specific or particular acts of immorality are not generally permitted to be shown.

See Rice Ev., Vol. 2, section 506. As to the distinction made between real and reputed character, see *Lyons* v. *State*, 52 Ind. 426.

The specific acts of intoxication, upon the part of the deceased, were proper as tending to show, not what was reputed to be a fact, but what was in reality a trait or habit to which he had become addicted, and which had actually impressed upon him its bad effects.

We are, therefore, of the opinion that the evidence in controversy was competent to be considered by the jury upon the question of estimating, or rather in mitigation of, damages in the event they found in favor of the appellant under the issues in the case, and the court did not err in refusing appellant's motion to reject it. A portion of this evidence went to show that the decedent,

only a few hours prior to the accident, was intoxicated. This part was also proper, perhaps, upon another ground, namely, as tending to prove, as insisted by appellee, that the deceased was in a condition of intoxication when he drove into the ditch, and, therefore, did not exercise due care. There is no available error in the record, and the judgment is therefore affirmed.

Filed November 26, 1895.