[No. 27959. Department Two. October 14, 1940.]

JOSEPHINE LUNDBERG, as *Administratrix, Appellant,* v. HERBERT BAUMGARTNER *et al., Respondents.*[1]

[1]Reported in 106 P. (2d) 566.

*Elton B. Jones* and *Rummens & Griffin,* for appellant.

*Shank, Belt, Rode & Cook,* for respondents.

DRIVER, J.—While John Looney was walking across a street in Seattle, on or near an intersection crosswalk, he was struck and mortally injured by an automobile driven by Herbert Baumgartner. The plaintiff, in her capacity as administratrix, brought this action for the decedent's wrongful death for the benefit of his four surviving minor sons. A trial before a jury resulted in a verdict for the defendant Herbert Baumgartner, the only defendant appearing in the action. Plaintiff's motion for a new trial was denied, and from a judgment of dismissal, she has taken this appeal.

There was ample evidence to take to the jury the question of respondent's negligence and also the issue of contributory negligence on the part of the decedent,

which was tendered by an affirmative defense in respondent's answer. The assignments of error pertain only to the admission of evidence and the giving of, and the refusal to give, certain instructions. The facts will not, therefore, be stated except in the discussion of the issues involved and then only to the extent necessary to an understanding of such issues.

■ The accident occurred on December 20, 1938. A police officer testified at the trial that, during the preceding April, the decedent had been arrested in Seattle, and that he was then intoxicated. Another police officer testified that, in May, the decedent had again been arrested and, on that occasion, also was under the influence of liquor. A third officer testified that he had seen the decedent one afternoon in September "slightly under the influence" of liquor.

Appellant assigns as error the admission of this testimony over her objection. It was admitted on the theory that it was material in mitigation of damages. The trial court, no doubt, had in mind the principle that, for a number of reasons, the amount of compensation which the dependents of one wrongfully killed may be entitled to recover is affected by his habit of drinking intoxicants. Such a habit tends to lower a man's earning capacity, to shorten his expectancy of life, to impair his usefulness as a father, and to lessen his protection and support of his family. See annotation to 9 A. L. R. 1407, subd. II, and note to Ann. Cas. 1916E, 652.

Appellant concedes this to be the rule, but contends that three instances of overindulgence during a period of approximately eight months are not sufficient to prove a habit.

There might be merit in this contention if the testimony stood alone, but it must be considered in connection with other evidence in the record. Appellant,

a daughter of the decedent, testified that her father had sometimes drunk intoxicating liquor; that she had, on at least one occasion, seen him intoxicated; and that his drinking had increased during the last year and a half of his life, following the death of his wife. There was also testimony, which will be hereinafter noted in connection with another assignment of error, indicating that the decedent had been drinking the night he was killed. The testimony of the three officers and all this other testimony, considered together, tended to prove that the decedent had used intoxicants at least to the extent of affecting, to some appreciable degree, the value of his life to his minor children. The testimony of the police officers as to the three instances of intoxication was, therefore, admissible. This conclusion is supported by the following authorities: *Wright v. Crawfordsville,* 142 Ind. 636, 42 N. E. 227; *McIlwaine v. Metropolitan St. R. Co.,* 74 App. Div. 496, 77 N. Y. Supp. 426; *Holmberg v. Murphy,* 167 Minn. 232, 208 N. W. 808; *Townsend v. Armstrong,* 220 Iowa 396, 260 N. W. 17.

■ Appellant next contends that the trial court erred in failing to give an instruction limiting to mitigation of damages the purpose and effect of the testimony as to the decedent's insobriety. That she would have been entitled to such an instruction had she requested it, can scarcely be questioned; but, having made no such request, she is not now in a position to complain. If evidence is admissible for a specific purpose, no error can be assigned either as to its admission or effect where only a general objection to its admission was made and no instruction limiting its purpose was requested. *Louisville & N. R. Co. v. Scott's Adm'r,* 188 Ky. 99, 220 S. W. 1066; *Burger v. Taxicab Motor Co.,* 66 Wash. 676, 120 Pac. 519; *Lemcke v. Funk & Co.,* 78 Wash. 460, 139 Pac. 234, Ann. Cas. 1915D, 23; *Blystone v. Walla Walla Valley R. Co.,* 97 Wash. 46, 165

Pac. 1049; *Elliott v. Roberts,* 141 Wash. 689, 252 Pac. 131; *Wheeler v. Portland-Tacoma Auto Freight Co.,* 167 Wash. 218, 9 P. (2d) 101.

■ Appellant further maintains that, in any event, the testimony as to the decedent's prior arrests had "no evidentiary bearing; was highly prejudicial and utterly inadmissible."

An arrest is not competent evidence of either conviction of crime or of misconduct. It is, in effect, only a charge or accusation of wrongdoing. The law presumes one so accused to be innocent until his guilt has been established in a court of competent jurisdiction, by legally admissible evidence, beyond reasonable doubt. 5 Jones Commentaries on Evidence (2d ed.), 4650, § 2370; see, also, 3 Wigmore on Evidence (3rd ed.), 545, § 980a.

It is reversible error to show that a defendant who testifies as a witness in a criminal case had previously been charged with a crime, notwithstanding the provisions of Rem. Rev. Stat., § 2290 [P. C. § 8725], authorizing proof of prior conviction of a witness to affect his credibility. *State v. Arnold,* 130 Wash. 370, 227 Pac. 505; *State v. Morgan,* 146 Wash. 109, 261 Pac. 777.

■ The respondent does not claim that the testimony as to the two arrests of the decedent was admissible. He does contend that no reversible error resulted from its reception in evidence, because the appellant did not make sufficient objection to its introduction, and for the further reason that the testimony was not prejudicial to the appellant.

For the sake of accuracy, the testimony in question, together with the appellant's objections thereto and the court's rulings, is quoted directly from the record. Officer Holben, on direct examination by respondent's counsel, testified as follows:

"Q. How long had you known John Looney, the deceased? A. Well, that night I didn't recognize him at all. 'Q. Had you known him before that? A. Well, just one previous arrest, is all. Q. When was that? Mr. Jones: Objected to, your Honor, not material to the issues of this case. The Court: Well, it depends on the proof. Mr. Cook: I will show that. Mr. Jones: I submit it can't have any purpose except to prejudice the minds of the jury, but I will reserve my objection till the time he asks the question. Q. (by Mr. Cook) When was that incident to which you refer to? A. If I remember right, it was around the 7th of May, 1938. Q. That would be a matter of the May before this December, is that right? And what was Looney's condition at that time? Mr. Jones: Objected to, your Honor. It has no connection, May and December. The Court: By itself, it does not. Mr. Cook: There will be other evidence. The Court: Overruled. A. Well, we were cruising there on 36th—Mr. Jones: (interposing) I object, your Honor, to testimony of what he was doing. If he wants to testify as to any condition—The Court: (interposing) Just what was the occasion of the arrest? The Witness: Well, his condition wasn't so, so he could drive a car. He had the youngster with him, so we took him to the station. Q. (by Mr. Cook) What was his condition, Officer? A. Well, he was under the influence of liquor. Q. And that was in May that you speak of? A. That was in May. Q. Did you ever have any other experience with him? A. Not to my knowledge, no. Mr. Jones: Well, your Honor, I move that that testimony be stricken and the jury be instructed to disregard it. The Court: Unless it is connected, I will entertain your motion. Mr. Cook: There will be other evidence, the same thing."

Officer Sweeney, on direct examination conducted by respondent's counsel, testified:

"Q. Had you known the deceased, John Looney, prior to the evening of this accident? A. Oh, we had occasion to arrest him, I believe it was April the 8th, about 12:15 A. M. Q. At night? A. A. M. Q. 12:15 in the morning? A. Yes. Q. Just past midnight?

A.   Yes.  Q.  Where was that, Officer?  Mr. Jones:  Your Honor, I will make the same objection, it has no connection with this particular death.  The Court:  The same ruling.  Mr. Jones:  Very well.  .  .  .  Q.  And what was his condition at that time, Officer?  A.  He was pretty much under the influence of liquor."

It will be noted that, in the testimony of each of the officers, the witness's statement as to the decedent's arrest was not responsive to the question which preceded it.  Appellant's counsel, therefore, had no opportunity to object to the question in the customary way before the objectionable answer was made.  He did object, however, as soon as he could reasonably be expected to comprehend the purport of the unresponsive answer and formulate and state his objection thereto.  It is also worthy of note that, as to each of the two witnesses, appellant's counsel made an objection after the officer had testified to an arrest, but before there was any statement as to the decedent's being under the influence of liquor and before the witness had been asked any question which would responsively elicit any such statement.  Counsel thus indicated, it would seem, that his objection was directed against the testimony as to the arrest apart from the testimony of intoxication.  Furthermore, after both parties had rested and the jury had retired, appellant moved to strike the police officers' testimony, and the following colloquy between appellant's counsel and the court ensued:

"Mr. Jones:  At this time, your Honor, I move that the Court strike any testimony regarding the arrests of Mr. Looney during May and September, as having no connection with the issues involved, being calculated to prejudice the minds of the jury, and that the Court instruct the jury that they are to disregard the testimony.  The Court:  Well, Mr. Jones, so far as any direct connection with intoxication at the time of the accident, it may not be material, but I think the habits

of the decedent do become material in connection with the probable support which the minors might receive from him. MR. JONES: Only, your Honor, two arrests don't imply a habit. THE COURT: No, it is rather an unusual thing, it is an element which the trier of the facts might consider in determining the rather vague problem of financial loss. I deny the motion."

Appellant's motion to strike was directed solely against "any testimony regarding the *arrests*" of decedent Looney. Neither in the motion nor in his subsequent comment thereon did appellant's counsel mention any testimony as to decedent's being under the influence of liquor. The objections to the testimony and the motion to strike the same, although not as specific as might be desired, were, nevertheless, sufficient, under the circumstances, to fairly apprise the trial court that appellant considered the testimony regarding decedent's arrests to be objectionable and prejudicial, such testimony being patently incompetent and inadmissible.

In 26 R. C. L. 1051, § 57, the rule with reference to the sufficiency of a general objection to this character of testimony is stated as follows:

"There may be cases, of course, where the incompetency of the evidence is so palpable that a mere general objection will be deemed sufficient. In other words where the evidence offered is no evidence at all such a 'sheet lightning' objection is sufficient. . . . Again, where the portion of the evidence objected to is clearly pointed out, and its illegality is apparent on its face, then the objection must be allowed. Indeed, the very reason why the court may disregard objections to evidence, when the particular grounds of the objection are not stated, is that the court would have to cast about or look for the grounds on which the objection was made. But when the evidence objected to is clearly designated, and on its face it is illegal, without inquiry into any fact aside from the evidence itself,

the objection cannot be disregarded merely because no specific ground of objection is stated."

To the same effect, see 64 C. J. 185, 186, § 205 (c).

Respondent cites a number of cases in support of his contention that appellant's objections to the officers' testimony as to the arrests were insufficient. None of them is in point here. They are cases in which either no objection whatsoever had been made in the lower court to the testimony claimed to be inadmissible, or the objection was clearly insufficient. In none of them had there been any motion to strike the objectionable testimony. These cases, therefore, merely illustrate and subscribe to the universally accepted rule that the question of the admissibility of evidence may not be raised for the first time on appeal.

■ The next question for consideration is whether the testimony regarding decedent's arrests was so prejudicial to appellant as to constitute reversible error.

Lay jurors, as a rule, do not readily distinguish between an arrest and a conviction and are, therefore, prone to assume that, because a man has been taken into custody or to jail by the police, he must necessarily be guilty of some criminal misconduct. Moreover, the fact that the decedent had been arrested might well have caused the jurors to infer a greater degree of intoxication on his part than would otherwise have been the case. To be "under the influence" of liquor is one thing, but to be so drunk as to necessitate arrest by police officers is something quite different.

Can it be said, then, that considering its bearing upon the decisive issues of the case and the manner in which it was brought to the attention of the jury, the objectionable testimony did not substantially affect the jury's verdict?

The respondent testified that he had been driving his automobile, at the time and place of the accident, five to ten miles an hour in excess of the maximum lawful speed limit. The negligence of the respondent being thus virtually conceded, the defense of contributory negligence was of the utmost importance. In support of this defense, an effort was made to show that the decedent was under the influence of intoxicants at the time of the accident.

As to contributory negligence, respondent, the only surviving eye witness, testified that it had been raining quite hard, and he had not seen the decedent until the man's "white face" suddenly loomed up before him; that he had then slammed on his brakes and skidded on the wet brick pavement; and that the decedent did not appear to pay any attention to the approaching vehicle, but "had his head facing down on the pavement and continued right into the path of the car." A witness testified that he had met the decedent the night of the accident, and they had spent about an hour and a half together in a beer parlor. During that time, they shook dice, and each had two glasses of beer. The companion then took the decedent home shortly before eleven o'clock p. m., about two hours before the accident. Other witnesses testified that, after he had been struck by respondent's car, the decedent, then in an unconscious condition, was placed upon a parking strip at the side of the street, at which time a pint bottle half full of White Port wine fell from his pocket.

The subject of decedent's arrests was first broached during the trial by respondent's counsel on the cross-examination of appellant. She had testified, in effect, that the decedent drank occasionally, but not excessively. She was asked if she knew how many times he had been arrested for drunkenness and, in response, stated she had heard he had been arrested, but did not

know how often. She was then immediately asked if she had seen the decedent the night of his accident, and, when she answered in the negative, was asked the following question: "So you don't know whether he had been drinking that day in the evening or not?"

When subsequently Officer Holben was called as a witness by the respondent, after relating other observations he had made at the scene of the accident, he was asked if he had seen a bottle "around the body there." He answered that he had and then testified further, under questioning by respondent's counsel, that the bottle contained White Port wine; that its alcoholic content was about eighteen to twenty per cent; and that it had been turned over to the police department to be held as evidence. Immediately thereafter, the witness was asked the questions which brought out the testimony as to decedent's previous arrest for drunkenness. Officer Sweeney was then called as the next witness for the respondent and testified as to the decedent's arrest on the other occasion.

The testimony as to the arrests was thus brought to the attention of the jury in such a way as to indicate that it did have a bearing upon the decedent's condition as to insobriety at the time of the accident. There was nothing in the course of the trial, either in the court's instructions or otherwise, to indicate to the jury that the testimony should not have been considered in that connection. Under the circumstances, the testimony was prejudicial to the appellant, and its reception and retention in evidence constituted reversible error under the principles stated in 5 C. J. S. 973, § 1724, as follows:

"On the other hand, error in admitting evidence may be deemed to be prejudicial where it is impossible to determine in the particular case whether or not the jury were, in the admission of the evidence complained

of, unduly influenced in reaching the verdict which was actually returned in the lower court. . . . At all events, error in admitting evidence in any particular case will more readily be deemed to be prejudicial and to require a reversal . . . where the manner of admitting particular evidence or the nature thereof is peculiarly such as to create a situation prejudicial to the party against whom such evidence is introduced, . . ."

Appellant also assigns as error the trial court's refusal to give his requested instruction No. 3 and the giving of instruction No. 8.

It would serve no useful purpose to extend this opinion by a detailed discussion of such assignments. The requested instruction was, in substance and effect, included in the instructions given by the court. Instruction No. 8, of which the appellant complains, defining the duty of one in the situation of the decedent to look to his right for approaching vehicles before crossing a public street, contained no error prejudicial to the appellant. The objection that the instruction did not take into account the presumption that the decedent was exercising due care at the time of the accident is not tenable for the reason that the court, in its instruction No. 7, advised the jury of such presumption.

The judgment is reversed, and the case remanded for a new trial.

BLAKE, C. J., BEALS, MILLARD, and STEINERT, JJ., concur.