ERVIN, Judge,
concurring and dissenting.
In this personal injury action, Duffell appeals from a judgment entered pursuant to a jury verdict absolving appellees from any liability. She raises numerous points on appeal, two of which in my judgment require reversal and a remand of the case for new trial.
Appellant was injured when an ambulance, which she occupied in her capacity as an emergency medical technician and was not driving, swerved off a wet road while on an emergency mission and turned over. As a result of the accident she sustained a compression fracture of the T-9 vertebra, causing, according to a treating orthopedist, a fifteen percent impairment of the whole body.
The ambulance, owned by appellee Walton County and loaned by it to appellee South Walton Emergency Services (South Walton), was driven by Stephen Kay, who, like Duffell, was employed by South Walton.[1] The actual cause of the accident was factually disputed. Appellant and Kay contended that appellee Midori Quade, driving a yellow Thunderbird automobile ahead of the ambulance, pulled suddenly into the passing lane in front of the ambulance, while the latter vehicle, with its lights flashing and siren sounding, was attempting to pass other vehicles proceeding in the same direction. Appellee’s unexpected maneuver required Kay to turn the vehicle sharply in order to avoid a collision, with the result that the ambulance went out of control and overturned, thereby causing the injuries suffered by appellant.
Mrs. Quade, on the other hand, denied that the car driven by her was the one responsible for the accident, stating that at the time of the accident she had been following in her own traffic lane another car driven by her husband, and, when her husband pulled his automobile off the right-side of the road, she did the same with hers. Her testimony suggested the possi *1353 bility of another vehicle pulling m front of the ambulance, in that, she stated, for some time before and until the time she stopped her vehicle, she had been followed by a black, late model Toyota truck with a camper shell. She neither saw nor heard the ambulance coming, as her windows were closed and the defroster on; nor did she know of the accident until her husband told her of it.
Mrs. Quade’s testimony was corroborated in part by that of another witness near the accident scene, Janice Fulton, who stated that just before the ambulance swerved from the road, she saw a camper truck which appeared to be out of the line of traffic. Ms. Fulton, however, admitted that she had been distracted shortly prior to the accident and therefore could not state with certainty what was its cause.
As the lower court properly instructed the jurors, there were two alternative issues of liability to be decided by them: Whether South Walton and Walton County, appellant’s employers, were negligent in maintaining the ambulance by allowing it to proceed on an emergency mission, and, if so, whether such negligence was the legal cause of the injury; and second, whether Mrs. Quade was negligent in the operation of her automobile, and, if so, was her negligence the legal cause of plaintiffs injury. We can only surmise from the verdicts rendered in favor of all defendants that the jury concluded that some unnamed person was responsible for the accident in question.
I.
Duffell’s fourth point on appeal is that the admission of evidence before the jury of specific acts relating to appellant’s use of non-prescribed drugs had little relevant value to the issues in dispute, and the court therefore erred in admitting evidence of the same. The appellees’ response, which the lower court has apparently accepted, is that appellant’s drug usage was admissible either because it was relevant to appellant’s damage claims, or because appellant’s conduct at trial injected the issue before the jury; therefore the point has been waived. I disagree as to both reasons advanced.
Prior to trial, appellant filed two motions in limine. The first sought to bar any mention of an incident, a month following the accident, involving appellant’s forgery of a prescription for pain medication, which resulted in the filing of a criminal offense against her. The basis of the motion was that appellant had pled nolo contendere to the charge, adjudication of guilt was withheld and appellant placed on probation, thus no conviction resulted. The trial court granted the motion.[2] Appellant’s second motion sought to forbid evidence relating to the revocations of appellant’s practical nursing licenses on the ground that such evidence would be inflammatory to the jury and prejudicial to the appellant as plaintiff. Appellant’s Alabama license had been revoked following an incident that occurred three years before her accident, involving appellant’s theft of demerol, prescribed for a patient, at an Alabama hospital where appellant worked as a nurse. Her Florida license had been revoked due to (1) errors and omissions in .the records of drugs that appellant as a nurse had the responsibility of administering to patients at a Florida hospital, and (2) her plea of nolo contendere to the forged prescription charge. The record-discrepancy incident at the Florida hospital occurred before the accident, while the event leading to appellant’s criminal prosecution occurred shortly after it.
Appellees, the Quades, in opposition to the motions in limine, argued that evidence relating to the loss of the license was relevant both to appellant’s claim for lost wages, as she could no longer return to nursing due to the revocation of her li *1354 cense, and to her claim for loss of enjoyment of life, as evidence of what her life was like before the accident. They also maintained that the introduction of evidence relating to appellant’s drug usage occurring before the suspension of her Florida nursing license would shed light on her need for excessive amounts of demerol in the hospital while recovering from her accidental injuries. Finally they urged that such evidence was material to the progress and course of appellant’s treatment in that the medical evidence showed that appellant’s doctors knew of and were concerned about her abuse of prescribed pain medicine, and that they had since stopped prescribing narcotic medicines for her.
Appellant’s attorney answered that he had no objection to the defense commenting on anything contained in the hospital records relating to the treatment of her accidental injuries, including her use of prescription drugs given to her for relief of pain, but that he did object to any mention of her use of drugs following her discharge from the hospital, because her subsequent drug problems related to the subject matter of the motions in limine. The court ruled that if appellant testified that she was unable to return to work as a nurse or emergency medical technician because of her injuries, it would permit defense questions regarding the loss of her license. Appellant then dropped her damage claims for loss of earning capacity and loss of wages, retaining, however, her claims for pain and suffering and loss of capacity to enjoy life, as well as medical expenses incurred by reason of her accidental injuries.
Notwithstanding the above rulings, the trial judge later held, prior to opening statements, and over appellant’s objection, that the Quades’ defense counsel could refer to appellant’s drug abuse problems existing before her injury, but not to the forged prescription. The specific reason given by the court for the admission of such evidence was that it was relevant in regard to her recovery, that “people who get addicted to drugs don’t ever recover.” Appellant’s counsel unsuccessfully contended that the requested evidence related to the grounds stated in her motions in limine seeking to bar such evidence, in that the basis of one of the doctor’s testimony concerning appellant’s drug abuse would be his knowledge that appellant had forged prescriptions for drugs, while another doctor would base his knowledge on the fact that appellant’s license had been revoked.
After the court had ruled that the Quades’ attorney could mention in his opening statements to the jury appellant’s “drug abuse”, appellant’s attorney, during his opening comments, advised the jury that it would have before it medical records of appellant’s stay in the hospital, which would refer to her suffering great pain and discomfort, and her need for medication in order to relieve the same. Appellant’s attorney also alluded to Duffell’s use of prescription drugs, given to her before the accident for the treatment of both her headaches and diabetes, and asked the jury to ignore any such evidence as irrelevant to the issue of negligence,
Following the above comments, the Quades’ attorney advised the jury that the evidence would show that appellant had a back problem when she first worked as a licensed nurse in Alabama several years before the accident, and that “instead of giving demerol to a patient, she took it herself.” Appellant’s objection to the comment, made on the ground that it violated the motion in limine, was overruled. The attorney for the Quades continued in the same vein, stating that appellant has had a problem with drug dependency or abuse ever since, and that the problem continued on through the accident.
Although I consider that the trial court erred in admitting the above comments, I agree that the defense’s proposed evidence of appellant’s drug use had relevant value for the purpose of assessing damages. As was observed in Annot., 9 ALR 1405, 1407 (1920):
The intemperate habits of one negligently injured or killed may affect the damages sustained by him or his next of kin in several ways. First, they may ac *1355 count, in whole or in part, for the physical condition and suffering claimed to have resulted from the accident.... Second, they may decrease his earning capacity. Third, they may shorten his expectancy of life. Fourth, they may lessen his usefulness to and protection and support of his family.
(e.s.) A number of pre-Code cases have recognized the defense’s right to show that the plaintiff was a person of intemperate habits in order to decrease the damages claimed. E.g., Wright v. Crawfordsville, 142 Ind. 636, 42 N.E. 227 (1895) (evidence of repeated acts of intemperance admissible to disclose that, had the decedent lived, such acts would have impaired his ability to earn money and to use it in a manner to contribute to the proper support of his family); Kingston v. Fort Wayne & E.R. Co., 112 Mich. 40, 70 N.W. 315, on rehearing, 74 N.W. 230 (1897) (in defending a claim seeking loss of wages and future earnings, the defendant may present on cross-examination evidence relating to plaintiff’s intoxicating habits for the purpose of showing the probability of his obtaining and continuing employment).
Because appellant in the case at bar had abandoned her damage claims for loss of wages and loss of earning capacity, evidence of appellant’s drug abuse problems had only marginal value to her remaining claims for loss of enjoyment of life and pain and suffering. The admissibility of such evidence is now controlled by the provisions of Florida’s Evidence Code. Before he determined the proposed evidence was admissible, the trial judge first should have complied with the provisions of Section 90.-403, Florida Statutes, stating in part that “relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence.” (e.s.) Professor Ehrhardt comments that although the trial court is accorded “a wide measure of discretion” to determine whether the probative value of the evidence is substantially outweighed by any of the factors listed in section 90.403, the court nevertheless is required to “weigh the proffered evidence against the other facts in the record and balance it against the strength of the reason for exclusion.” Eh-rhardt, Florida Evidence § 403.1 at 100 (2d ed. 1984).
A number of cases in the federal sector have, following the balancing procedure prescribed under Rule 403, excluded evidence relating to a plaintiff’s habits for drug or alcohol usage. For example, the Fifth Circuit Court of Appeals, in holding that evidence relating to the deceased’s smoking marijuana on a prior occasion had been erroneously admitted in a wrongful death action, observed:
We question the relevance of this evidence and find it to be tenuous at most. In contrast to any slight value it might have upon the jury’s determination of damages, we view the evidence as being highly prejudicial. Accordingly, we conclude that the evidence that Michael had smoked marijuana on one occasion was precisely the type of highly prejudicial evidence that should be excluded under Federal Rule of Evidence 403. The court should have granted the motion in limine on the issue of marijuana smoking.
Harless v. Boyle-Midway Division, American Home Products, 594 F.2d 1051, 1058 (5th Cir.1979). See also United States v. Lyons, 731 F.2d 243, 247 (5th Cir.1984) (evidence of drug addiction has so little relevance to insanity defense that it should generally be excluded under Federal Rule 403 as prejudicial); Meller v. Heil Co., 745 F.2d 1297, 1303 (10th Cir.), cert. denied, 467 U.S. 1206, 104 S.Ct. 2390, 81 L.Ed.2d 347 (1984) (possession of drug paraphernalia found in the personal possession of plaintiff’s decedent at the scene of the accident was properly excluded under Federal Rule 403 — despite the claim by the defendant that such evidence was probative of the decedent’s life expectancy — on the ground that it appeared that the defendant sought to introduce such evidence for the specific purpose of arousing juror sentiment against the decedent).
Cases from out-of-state jurisdictions endorsing a similar view include Mydlarz v. *1356 Palmer-Duncan Construction Co., 682 P.2d 695, 704 (Mont.1984) (evidence of the plaintiffs alcoholism in a personal injury action likely to mislead the jury where there was no evidence that he was intoxicated on the day of the accident); Rittenhouse v. Ehrhart, 126 Mich.App. 674, 337 N.W.2d 626 (1983) (trial court properly excluded as prejudicial, under the Michigan Evidence Code, evidence that a person asphyxiated by a defective muffler had taken mescaline in the past).
Florida courts also have followed the approach used by the federal judiciary in their consideration of whether the proposed evidence meets the criteria required for admissibility under Section 90.403, Florida Statutes. See, e.g., Hitchcock v. State, 413 So.2d 741, 744 (Fla.), cert. denied, 459 U.S. 960, 103 S.Ct. 274, 74 L.Ed.2d 213 (1982) (attempted reputation testimony relating to defendant’s relative was so remote and slightly probative of any relevant issue that it was properly excluded); Roby By and Through Roby v. Kingsley, 492 So.2d 789 (Fla. 1st DCA 1986) (evidence that plaintiff in a personal injury action had a prior homosexual relationship was irrelevant to his injuries and, even if relevant, its probative value was substantially outweighed by the danger of unfair prejudice); Long v. State, 407 So.2d 1018 (Fla. 2d DCA 1981) (characterization of defendant in a theft prosecution as a shoplifting suspect, without proof that he had committed any previous thefts, was so prejudicial as to require reversal); Pulliam v. State, 446 So.2d 1172, 1173 (Fla. 2d DCA 1984) (officer’s comments about ongoing drug investigations inadmissible under section 90.403). This court has, moreover, specifically adopted the committee note to Federal Rule of Evidence 403, after which section 90.403 was patterned, defining “unfair prejudice ... [as] a tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one.” See Westley v. State, 416 So.2d 18,19 (Fla. 1st DCA 1982).
In my judgment the evidence of appellant’s drug usage was inadmissible under any other theory recognized by Florida’s Evidence Code. It was inadmissible under section 90.406, relating to routine practices of organizations, for the simple reason that appellant is not an organization — although, as observed by Professor Ehrhardt, the pre-Code decisions concerning the habits of individuals have not been displaced by the Code and are therefore “still good law.” Ehrhardt, supra, § 406.1 at 158. Evidence of the habits of an individual is admissible for the purpose of showing his or her conduct upon a specific occasion — if it corroborates other substantial evidence of the occurrence of the event. See Nationwide Mutual Insurance Co. v. Jones, 414 So.2d 1169, 1171 (Fla. 5th DCA 1982). In Botte v. Pomeroy, d/b/a South Seas Apartments, 497 So.2d 1275, 1277-79 (Fla. 4th DCA 1986), the Fourth District, while observing that ordinarily it would disapprove evidence of plaintiff’s prior drug use, stated that, under the circumstances, such evidence was material to the issue of contributory negligence, in that there was evidence that plaintiff had overdosed on drugs the day of the accident. In the present case, however, evidence relating to appellant’s habitual use of drugs did not and could not be offered to show appellant’s conduct at the time of the accident, in that appellant was a passenger — not the driver — when the accident occurred.
Similarly, such evidence was not admissible as character evidence under section 90.-404, in that character evidence is not admissible in civil cases for the purpose of showing that a person “acted in conformity with ... [his or her character] on a particular occasion,” unless the evidence falls under one of the three enumerated exceptions of section 90.404(1). Ehrhardt comments that “[cjharacter evidence in civil cases is admissible when it is relevant and offered to prove an issue other than that the person acted in conformity with his or her character.” Ehrhardt, supra, § 404.3 at 108. Thus if the character of a party is at issue, such as in a defamation action, because the defendant asserts the defense of truth, such evidence is, under such circumstances, *1357 admissible. Abraham v. Baldwin, 52 Fla. 151, 42 So. 591 (1906).
The filing of appellant’s personal injury action below did not by’ itself bring her character into issue. The only basis for the admissibility of such evidence, as applied to the facts of this case, was that once appellant offered evidence of her character, such evidence could be impeached pursuant to the provisions of sections 90.608-90.610. See section 90.404(l)(c). Without reciting in detail the circumstances permitted by those statutes for the admission of character evidence, i.e., impeaching a witness by proof of the person’s prior inconsistent statements, prior convictions of crimes, or by reputation testimony regarding the witness’s truth and veracity — none of which is applicable to the challenged evidence admitted below — I regard that the record before us discloses that before appellant had appeared as a witness in her behalf, her character had already been impeached by evidence relating to her drug abuse. Consequently there was no basis under the Code for the introduction of such evidence.
Appellees respond alternatively that even if evidence of appellant’s drug use had no admissible basis under the Code, the error, if any, was invited by appellant’s conduct at trial. In my judgment the record does not demonstrate that appellant’s actions invited, acquiesced, in or waived the error asserted. Before the doctrine of invited error may be applied, the specific ruling which the appellant assails must have in some way been induced by appellant’s affirmative action or inactivity. See 5 Am. Jur.2d § 713 (1962). For example, in Cowley v. Northern Pacific Railroad Co., 68 Wash. 558,123 P. 998 (1912), in response to the plaintiff’s contention that the judgment of damages was entered at the invitation of the defendant, because defense counsel at the conclusion of the trial had said that he would consent to the trial court’s reaching a just measure of damages, the Washington Supreme Court commented that since the lower court had expressly stated that its decision was not influenced by any suggestion made by defense counsel, the point raised had been appropriately preserved.
In my judgment the error now on appeal has also been preserved for appellate review, in that the record reveals that it was only after the trial court had overruled appellant’s motion to prohibit any reference to appellant’s drug usage occurring before the accident, and after the opening statements of the Quades’ attorney, referring to appellant’s drug dependency and her theft at an Alabama hospital of prescription drugs intended for a patient, that appellant introduced evidence of her drug problems.
I recognize that before the presentation of any evidence and during the opening statements of appellant’s counsel, reference was made to appellant’s use of prescription drugs at the hospital for treatment of her accidental injuries. Surely, however, this statement, directly relevant to her course of treatment, cannot be viewed as “opening the door” to the magnitude of prejudicial comment made by the Quades’ attorney by his repeated references to appellant’s drug abuse. I am aware also that appellant’s counsel, during opening comments, mentioned to the jury appellant’s use before the accident of prescription drugs given to her for the treatment of certain conditions, and asked that any such evidence not influence the jurors’ verdicts in regard to the issue of negligence. Those comments were clearly made following the court’s ruling on the motions in limine, in anticipation that appellees would be allowed to introduce evidence of appellant’s pre-accident drug usage. Given the court’s actions, appellant’s opening statements should not be considered to have contributed to or influenced the erroneous ruling.
Concerning the contention that the error was waived or acquiesced in during appellant’s presentation of the evidence, the record discloses that appellant’s mother was asked on direct examination whether her daughter had a problem at an Alabama hospital where she and appellant had both worked, and she replied that appellant had taken medication intended for a patient and lost her job as a result. The jury had *1358 earlier been apprised of this incident during the opening statements of the Quades’ attorney. Later, while on cross-examination, the mother said she was aware that appellant had lost a second nursing job in a Florida hospital due to drug record discrepancies. The mother was also asked about a drug problem following the accident, and, over objection, the court ruled that defense counsel could ask if the witness knew whether appellant had attempted to fill an unauthorized prescription, but added that no mention of subsequent criminal charges could be made. The mother then testified that she knew of her daughter’s attempt to fill the unauthorized prescription.
With the evidence before the jury pertaining to the incidents occurring before her accident, i.e., the loss of her nursing jobs in Alabama and Florida, and that following the accident, the attempt to fill an unauthorized prescription, appellant took the stand and was asked by her attorney to “tell all.” He added, “If I don’t ask you Carol, they are. So tell all.” Appellant then recounted the details of the drug-taking incident at the Alabama hospital. She continued with the account of drug-charting discrepancies at the Florida hospital, although she denied taking any drugs herself. She also related that a month following the accident, still experiencing pain in her back, she took a piece of prescription pad, and filled out a prescription for herself and attempted to place it with a druggist, who refused to fill it. During cross-examination, she acknowledged that she had omitted listing her prior nursing positions with the two hospitals on her application seeking employment as an emergency medical technician with South Walton. She also admitted that her Florida and Alabama nursing licenses and her emergency medical technician license had been revoked.
I think it obvious that the conduct of appellant’s trial counsel in making disclosure of his client’s drug history was a last desperate attempt to salvage a case that had already been fatally infected by the lower court’s rulings and the trial tactics of the Quades’ attorney. It was only after her specific objections to the admissibility of such evidence had been overruled that appellant submitted evidence relating to her drug dependency. By analogy, “the doctrine of waiver does not apply where the appellant makes a proper objection of the matters included in the court’s general charge, and when such objection is overruled, necessarily offers an instruction on such matters.” 3 Fla.Jur.2d, Appellate Review § 294 at 348-349 (1978). No lawyer— as was appellant’s below — should ever be forced to make such a Hobson’s choice: either to go forward with the trial with no reference to his client’s drug habits, after nearly all of his objections to clearly prejudicial evidence had been overruled, or, faced with the adverse ruling, to appeal to the jurors’ sense of justice and fairness by “telling all”, in the hopes that his client's openness and candor would add credibility to the witness’s testimony bearing upon disputed factual issues.
In a case such as this, where appellant’s employers had negligently failed to provide workers’ compensation insurance for her, thereby disentitling her to such benefits, the trial judge should have scrupulously complied with the requirements of section 90.403, by balancing the attenuated value of evidence pertaining to appellant’s drug usage against its prejudicial impact. He failed to do so. Since, in my judgment, the error has been preserved, I would reverse the cause as to the issue raised and remand for new trial.
II.
Appellant also complains that the lower court erred in allowing into evidence certain statements contained in a traffic accident report that were made to an investigating officer at the scene of the accident. During her case-in-chief, the appellant called as her witness the officer and asked him to read, without objection, the entire narrative from his accident report, except for the last sentence. The purpose of such evidence was to offset the impact of a comment, unobjected to by appellant, that had been made earlier by the Quades’ coun *1359 sel during opening statements to the jurors, advising them that the investigating officer at the accident scene, after briefly detaining the Quades, “then ... let them go, and they forgot about this thing.” In bringing the report to the jurors’ attention, appellant’s attorney similarly wished the jurors to be aware that the driver of the ambulance had not been charged.
The narrative in the report related primarily to statements made to the officer by the driver of the ambulance, which advised that an unknown vehicle had pulled onto the shoulder of the road and then back onto the pavement in front of him. The narrative continued, reciting that found at the scene was a 1982 Ford Thunderbird, which was driven by Mrs. Midori Quade, and, although the driver of the emergency vehicle informed him that he could not positively identify the vehicle driven by Mrs. Quade as that which pulled in front of him, it looked the same.
During cross-examination of the investigating officer, counsel for the Quades asked the officer to read the last two lines of the report, which had been omitted from his earlier testimony. Appellant’s objection to the introduction of this evidence was overruled, the court stating that any potential error in reading the remainder of the report had been waived by its partial disclosure. The following was then read in the presence of the jury: “According to the witnesses there was no vehicle that pulled on the shoulder and back onto the road in front of V-l [the ambulance].”
Initially I would observe that the statements admitted on behalf of both appellant and appellees were clearly hearsay, in that they were offered as proof of the matter asserted, and were therefore not admissible under any of the recognized exceptions of the Evidence Code. The statements that were admitted without objection — those of the ambulance driver — were hearsay, notwithstanding that the driver of the vehicle was available to testify and did testify at trial consistently with the statements made in the report, because the availability of the declarant does not make the hearsay statements otherwise admissible — unless the declarations fell within any of the 22 exceptions listed under section 90.803, which they did not.
The remaining portion of the accident report that was objected to should also have been excluded as inadmissible hearsay. While the statements may have corroborated Mrs. Quades’ trial testimony, they were nevertheless hearsay, and if the witnesses were available to testify, such statements would be inadmissible, because, as previously observed, they are not recognized as falling under any of the exceptions of section 90.803. If, on the other hand, the statements were attributable in part to certain unnamed, unavailable witnesses, the statements were also hearsay, and inadmissible because none of the exceptions of section 90.804, pertaining to the declarations of unavailable witnesses, is applicable.
In justifying the admission of the above portion of the report, the Quades rely upon Section 90.108, Florida Statutes, permitting, once a portion of a written or recorded statement has been introduced by a party, the introduction of the remaining portion if “in fairness [it] ought to be considered contemporaneously.” I agree that section 90.108 controls the issue. I disagree, however, that the remaining portion of the statement “in fairness ought to be considered contemporaneously” with that portion of the accident report which was admitted without objection.
Although Section 316.066, Florida Statutes, protects the confidentiality of accident reports, that privilege can of course be waived by the affected party. See Soler v. Kukula, 297 So.2d 600 (Fla. 3rd DCA 1974). I cannot agree that waiver occurred under the circumstances presented. In commenting upon section 90.108, Professor Ehrhardt points out that there is a dispute among authorities as to whether inadmissible evidence is made admissible, simply because one portion of a writing has been admitted. Some commentators take the view — similar to the trial court below — that offering part of a statement opens the door *1360 to any other portion of the statement that qualifies or explains the portion already introduced, even if the latter portion is inadmissible; whereas others take the contrary view, advocating that Federal Rule 106 was not designed to make inadmissible evidence admissible. Ehrhardt, supra, § 108.1 at 28-29.
The only reported Florida opinion that has placed an interpretation upon the effect of the statute — the Third District Court of Appeal — has adopted the latter position, holding that section 90.108 does not offer any “continuity” exception to the hearsay rule provided by the Florida Evidence Code. Sundale Associates, Ltd. v. Southeast Bank, 471 So.2d 100, 103, n. 5 (Fla. 3d DCA 1985). The court stated that a letter written by one of the parties, ostensibly in continuity with one of a series of letters from the opposing party, did not qualify under the related writings exception to the hearsay rule. Other courts applying a similar interpretation include United States v. Costner, 684 F.2d 370, 373 (6th Cir.1982) (Federal Rule 106 is simply a regulation of the order of proof and does not make admissible evidence that is barred by other rules); accord United States v. Terry, 702 F.2d 299, 314 (2d Cir.), cert. denied, 461 U.S. 931, 103 S.Ct. 2095, 77 L.Ed.2d 304 (1983); United States v. Burreson, 643 F.2d 1344, 1349 (9th Cir.), cert. denied, 454 U.S. 830, 847, 102 S.Ct. 125, 165, 70 L.Ed.2d 106, 135 (1981).
Neither do I believe that the error can be deemed harmless under the circumstances presented. A crucial fact at issue was whether Mrs. Quade suddenly pulled her yellow Thunderbird automobile in front of the emergency vehicle while the latter was attempting to pass. Mrs. Quade denied that she had done so. The driver of the ambulance and appellant stated the contrary. The only other independent witness at the accident scene, Janice Fulton, could not testify with certainty as to what caused the ambulance to slide off the road, because her vision was distracted just before the accident’s occurrence. The admission of the disputed statement could well have influenced the jury’s verdict in finding no negligence on behalf of the Quades, in that the statement had the effect of suggesting to the jury that witnesses — known and unknown — at the scene had contradicted the testimony of appellant and the ambulance’s driver, and in fact had corroborated Mrs. Quade’s.
The above error was compounded when, during opening statements by counsel for the Quades, the attorney alluded to his clients having been “let go.” Appellant urges that although no objection was raised to this comment, its allowance was nonetheless fundamental error. I agree under the circumstances presented. The only possible inference that could be made from the statement is that the Quades were not charged with a traffic violation as a result of the accident. Such a comment has consistently been held to be improper and highly prejudicial to a party opponent. Eggers v. Phillips Hardware Co., 88 So.2d 507 (Fla.1956); Riedel v. Driscoll, 124 So.2d 42 (Fla. 1st DCA 1960); Ryder Truck Rental, Inc. v. Johnson, 466 So.2d 1240 (Fla. 1st DCA 1985).
Although the above cases are distinguishable from that at bar in that there objections were raised to the improper comments, other cases suggest that such comments may be so prejudicial as to warrant reversal as fundamental error. In Albertson v. Stark, 294 So.2d 698 (Fla. 4th DCA), case dismissed, 299 So.2d 602 (Fla.1974), the Fourth District held that the prejudice of a similar comment by defense counsel was so great as to be beyond cure by the court’s instruction to the jury to disregard the comment. In Albertson, opposing counsel immediately objected and moved to strike. Although mistrial was not sought at the time, the plaintiff raised it as error on motion for a new trial. Given the conflicting evidence in the case, and the fact that defense counsel deliberately and calculatedly made the offending comment, the Fourth District Court of Appeal concluded that the comment was so prejudicial to the plaintiff as to warrant a new trial. Similarly, in Ryder Truck, this court held that the prejudicial effect of the defendant’s in- *1361 court statement that he had not been cited for a traffic violation was beyond cure by an instruction to the jury, and that only a new trial could cure the error.
While the above cases are, as stated, distinguishable from that at bar, they nevertheless strongly imply that the prejudicial effect of comments suggesting to a jury that a party is free from fault is so great that only a new trial can cure the improper suggestion. When the comments of the Quades’ attorney were combined with the hearsay statements contained in the traffic accident report, reflecting that no vehicle pulled in front of the ambulance, the plaintiffs burden of persuasion became well-nigh insurmountable. I would therefore, for the above reasons, reverse and remand the case for new trial.
III.
I would also affirm the remaining issues presented in Duffell’s appeal. I agree with the apparent conclusion of the majority either that competent, substantial evidence exists in the record to support the specific rulings urged as error, or that the errors asserted were waived by appellant. As to the cross-appeal, I would affirm the cross-appellant’s (the automobile liability insurer for Walton County) appeal from the summary judgment entered against it, which found that insurance coverage in the county’s liability insurance policy applied to the claim of appellant Duffell against Walton County. In my judgment this point is controlled by Shelby Mutual Insurance Co. v. Schuitema, 183 So.2d 571 (Fla. 4th DCA 1966), cert. discharged, 193 So.2d 435 (Fla.1967). Accordingly, I would affirm in part, reverse in part, and remand the case for new trial.

. Appellant brought her personal injury action directly against her employer, as permitted by Section 440.11(1), Florida Statutes, in that the employer had failed to secure payment of workers’ compensation, as required by chapter 440.

. The trial court’s ruling was consistent with the rule stated in Barber v. State, 413 So.2d 482, 484 (Fla. 2d DCA 1982), recognizing that a defendant whose adjudication has been withheld and who has been placed on probation cannot thereafter be impeached by evidence concerning the crime. See also Johnson v. State, 449 So.2d 921 (Fla. 1st DCA), pet. for rev. den., 458 So.2d 274 (Fla.1984), and discussion in Ehrhardt, Florida Evidence § 610.4 (2d ed. 1984).